UNITED STATES of America,
Plaintiff-Appellee,

v.

Frederick T. FORD, Defendant-
Appellant.

No. 71-1796.

United States Court of Appeals,
Seventh Circuit.

Argued May 26, 1972.

Decided June 22, 1972.

Robert S. Bailey, Chicago, Ill., for defendant-appellant.

James R. Thompson, U. S. Atty., William T. Huyck, John Peter Lulinski, Jeffrey Cole, Asst. U. S. Attys., Chicago, Ill., for plaintiff-appellee.

Before Mr. Justice CLARK*, CASTLE, Senior Circuit Judge, and CUMMINGS, Circuit Judge.

CASTLE, Senior Circuit Judge.

Frederick T. Ford, the defendant-appellant, prosecutes this appeal from his conviction on a one-count indictment charging him with a violation of 29 U.S.C.A. § 501(c).[1] The indictment charges that from January 1, 1966 through May 1, 1968, defendant, "being an officer of, and employed by, a labor organization engaged in an industry affecting com-

---

* Associate Justice Tom C. Clark, United States Supreme Court, retired, is sitting by designation.

1. § 501(c) provides: "Any person who embezzles, . . . any of the moneys, funds, . . . of a labor organization of which he is an officer, or by which he is employed, directly or indirectly, shall be fined not more than $10,000 or imprisoned for not more than five years, or both."

merce, that is, chairman of the American Typesetting Corporation Chapel of Chicago Typographical Union Number 16," did embezzle $43,370 of the funds of "said labor organization" by converting to his own use dues and vacation payments collected from members of the American Typesetting Corporation Chapel, in violation of Title 29, United States Code, Section 501(c). (Labor-Management Reporting and Disclosure Act of 1959).

The defendant was tried to the court without a jury. It is stipulated that during the period alleged in the indictment the defendant was the Chairman of the American Typesetting Corporation Chapel of Chicago Typographical Union No. 16; that Chicago Typographical Union No. 16[2] was a labor organization engaged in an industry affecting commerce; and that defendant collected union dues and vacation payments from the members of the American Typesetting Corporation Chapel of which he was chapel chairman, which dues and payments were intended by the members to be remitted to Local Union No. 16 by the defendant, and he embezzled $43,370 of said dues and vacation payments. The testimony and documentary evidence adduced at the trial relate to the nature of the post of chapel chairman, and to the duties and activities of the defendant as chapel chairman of the Union's members employed at the American Typesetting Corporation plant.

■ The issue defendant tenders on appeal is whether the stipulated facts and the evidence adduced establish a violation of § 501(c) as charged in the indictment. In this connection the defendant asserts that the indictment charges him with the embezzlement of funds of the American Typesetting Corporation Chapel of which he was chapel chairman, rather than with an embezzlement of funds of Union No. 16 while an

officer thereof. On this premise he contends that the facts as established by the stipulation and proof do not constitute a violation of § 501(c) inasmuch as it is not shown that the chapel is a "labor organization" as defined for the purpose of § 501(c).[3] But defendant's premise is unsound. It involves a misreading of the indictment. The indictment not only charges him in the language of the statute with being an officer of and employed by a labor organization and embezzling its funds, but also it particularizes by alleging the specific office (chairman of the American Typesetting Corporation Chapel) he held in the labor organization (Union No. 16). Thus, the indictment clearly charges the defendant with being an officer of and employed by Union No. 16 and embezzling its funds. And it is stipulated that Union No. 16 was a labor organization as defined by 29 U.S.C.A. § 402.

■ The defendant additionally contends that the evidence fails to establish that the post of chapel chairman held by him constituted him an officer of Union No. 16, or that the funds embezzled were those of Union No. 16. We disagree. The record discloses that a chapel is a group of members of Local Union No. 16 who work in the same shop. Both the bylaws of the International and of the Local require that in all printing offices where three or more members of the Union are employed a chapel composed of such members shall be formed and a chapel chairman elected by the members. The International's bylaws provide that the chapel chairman is the "representative of the local union" and that in the performance of the "duties of his office" prescribed in such bylaws he is directly responsible to the local union. It is abundantly clear from the evidence that a chapel chairman, such as defendant was, although he is elected by the members of his chapel and receives his compensation from the chapel, nevertheless, is and functions as an officer of the local

2. A local of International Typographical Union.

3. In this connection see: Williams v. International Typographical Union, 10 Cir., 423 F.2d 1295, 1298.

union in the performance of duties in connection with the enforcement of union bylaws and contract provisions, in reporting to the local any violation he is unable to adjust satisfactorily, and in the collection of union dues and vacation payments.[4] It is thus shown that the local union utilizes and employs the chapel chairman as its official representative in matters of import to the union, including the collection of dues—a function vital to the union's existence and to the financing of its activities. And the legislative history of § 501(c) indicates that it was to apply to "any person having any direct or indirect functions in connection with the money or property of a labor organization". 104 Cong.Rec. 1327, 85th Cong., 2nd Sess. (1958). The District Court was correct in concluding that the statute encompasses a person who occupies the office of chapel chairman.

We perceive no merit in the defendant's further contention that the evidence fails to establish that the funds he embezzled belonged to Local Union No. 16. The record discloses that the dues and vacation payments were received by the defendant as the official representative of the Local who was authorized to collect them and charged with responsibility for their delivery to the Local at its headquarters. The funds were in his custody by virtue of his official status as the Union's authorized collector. They were the Union's funds.

The judgment order of the District Court is affirmed.

Affirmed.

4. In this latter respect the record shows that on pay day or on the day following, it is the chapel chairman's responsibility to see each member of his chapel and to collect from him his union dues and vacation fund advance computed on the basis of a percentage of the member's pay check. The "vacation payment" is a *weekly installment each member receives* from the employer on the member's paid-vacation for the following year. This payment is collected from the member each week by the chapel chairman who turns it in to the local union for deposit

in an escrow fund. When the member is about to go on vacation he requests his vacation check which is issued by the local's secretary-treasurer prior to the scheduled vacation date upon certification by the chapel chairman that the member is commencing his vacation on the scheduled date and is eligible to receive the va-*cation money accumulated to his credit.* The chapel chairman is required to deliver the money collected as dues and vacation payments, along with his tally sheet, to the headquarters of Local Union No. 16 within two days after pay day.