UNITED STATES of America

v.

Burton HOROWITZ, John Mongello, Robert McCarthy and Sheldon Golub, Defendants.

No. 78 CR 0166.

United States District Court, S. D. New York.

June 1, 1978.

---

Robert B. Fiske, Jr., U. S. Atty., for the Southern District of New York, New York City, for United States of America; John S. Siffert, Asst. U. S. Atty., New York City, of counsel.

Greenfield & Koppelman, New York City, for defendant John Mongello.

Washor & Washor, Brooklyn, N. Y., for defendant Sheldon Golub.

## OPINION AND ORDER

KEVIN THOMAS DUFFY, District Judge.

Defendants are charged in nine counts of a ten-count indictment with conspiracy, perjury, subornation of perjury and obstruction of proceedings before the National Labor Relations Board (NLRB). Count 10 additionally charges defendant Sheldon Golub with perjury before the grand jury. Defendant John Mongello has moved to dismiss the indictment as against him on the grounds of prosecutorial misconduct which deprived him of unbiased grand jury consideration.

Alternatively, Mongello has moved to compel disclosure of certain grand jury testimony. Defendant Golub has requested an evidentiary hearing with regard to his status at the time he appeared before the grand jury and the circumstances surrounding his appearance. A hearing pursuant to that request was held on May 22, 1978. On the basis of facts thereat adduced, Golub apparently argues that his Fifth Amendment rights against self-incrimination and to due process have been violated by the government's wilful failure to inform him that he was a target of the grand jury investigation at the time he testified before that body.[1]

---

1. Although Golub has not indicated the relief he seeks, the government has assumed that he is requesting a dismissal of the indictment for the following reasons: dismissal of Count 10, which charges him with perjury before the grand jury, on Fifth Amendment grounds, and dismissal of Counts 1, 4 and 8, charging him

## MONGELLO

The facts relevant to defendant Mongello's motion to dismiss are undisputed. By letter dated February 3, 1978, the United States Attorney's office informed Mongello that he was a target of a grand jury investigation and invited him to testify before that body. Counsel for Mongello contacted the prosecutor in response to the letter and informed him that Mongello intended to assert his Fifth Amendment privilege before the grand jury. After the prosecutor explained that he thought the grand jury was entitled to have Mongello appear before it and, if necessary, a subpoena would be issued to compel his appearance, counsel agreed to produce Mongello, who appeared before the grand jury on February 28, 1978.

In response to certain questions posed to him by the prosecutor at that time, Mongello did, in fact, invoke his Fifth Amendment privilege. Although the prosecutor did not instruct the grand jury to draw no adverse inference from Mongello's assertion of his privilege, he did apprise the jurors that Mongello had the right to refuse to answer any question that Mongello felt may tend to incriminate him.

Mongello now complains that the prosecutor's conduct in knowingly posing questions which caused Mongello to invoke his privilege, and in failing to direct the grand jury to draw no adverse inference from this repeated invocation, deprived him of "an unbiased and unprejudiced grand jury" (Koppelman Affidavit, p. 2) and thus invalidates his indictment. This claim is without merit.

■ Although Mongello was not compelled to appear before the grand jury by process, it is clear that he properly could have been subpoenaed to do so despite his

---

with conspiracy and substantive offenses with regard to certain NLRB proceedings, on the grounds that these counts could not have been separately considered by the grand jury unimpaired by the "taint" of Count 10. Government's Memorandum in Opposition, pp. 13–14.

status as a "target." *United States v. Wong*, 431 U.S. 174, 179 n. 8, 97 S.Ct. 1823, 52 L.Ed.2d 231 (1977); *United States v. Mandujano*, 425 U.S. 564, 584 n. 9, 96 S.Ct. 1768, 48 L.Ed.2d 212 (1976); *United States v. Dionisis*, 410 U.S. 1, 10 n. 8, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973); *United States v. Doe (Schwartz)*, 457 F.2d 895, 898 (2d Cir.), *cert. denied*, 410 U.S. 941, 93 S.Ct. 1376, 35 L.Ed.2d 608 (1943). It is also clear that the grand jury could not have compelled him to answer self-incriminating questions consistent with the rights guaranteed him by the Fifth Amendment. *Counselmen v. Hitchcock*, 142 U.S. 547, 12 S.Ct. 195, 35 L.Ed. 1110 (1892). Here, however, there was no operative compulsion, and Mongello was aware of and exercised his Fifth Amendment rights. That he did so in connection with matters which underlay his subsequent indictment before the grand jury which indicted him, is of no constitutional consequence and does not invalidate his indictment. As the Supreme Court has recognized, no inference of guilt flows from a grand jury witness' assertion of his Fifth Amendment privilege since the ultimate question of guilt or innocence of that witness, if subsequently indicted, is not properly a grand jury consideration, and since the invocation of the privilege before the grand jury is inadmissible at trial of the subsequent indictment. *United States v. Washington*, 431 U.S. 181, 131, 97 S.Ct. 1814, 52 L.Ed.2d 238 (1977).

 Little need be said with regard to Mongello's claim of prosecutorial misconduct. That the government sought to question Mongello concerning his knowledge of the events under investigation while aware that Mongello intended to assert his privilege was not improper. *United States v. Wolfson*, 405 F.2d 779, 785 (2d Cir. 1968), *cert. denied*, 394 U.S. 946, 89 S.Ct. 1275, 22 L.Ed.2d 479 (1969). Indeed, even were Mongello subpoenaed to testify, it would not have been improper to call him even were the government previously informed that the privilege would be claimed, unless Mongello were called solely for the purpose of displaying his claim of privilege to the grand jury. *United States v. Fortunato*, 402 F.2d 79, 82 (2d Cir. 1968), *cert. denied*, 394 U.S. 933, 89 S.Ct. 1205, 22 L.Ed.2d 463 (1969). Here, however, the facts militate against a finding that the prosecutor acted solely for such purpose, and Mongello has made no showing that his pleading the Fifth Amendment was simply for its prejudicial effect. At the time of his appearance the grand jury already had heard evidence for over eight months and had determined that Mongello was a target. Although the better practice might have been for the prosecutor to inform the grand jury that no adverse inference was to be drawn from Mongello's invocation of his privilege, *United States v. Wolfson, supra*, the grand jury was made aware that defendant had the right not to answer those questions he felt would tend to incriminate him and the mere absence of such a further direction did not in and of itself amount to prosecutorial misconduct which undermined the fairness of the proceedings. *See United States v. Washington, supra*. Having thus considered and rejected Mongello's claims in this regard, his motion to dismiss the indictment is denied.

By virtue of his alternative motion, Mongello seeks discovery and inspection of the grand jury testimony of Harold Dubliner and Ronald Straci, his purported attorneys at the time of his appearances both before the NLRB and the grand jury, so as to ascertain whether their testimony violated his attorney-client privilege. The government has objected to the disclosure of this testimony, contending that Mongello has failed to show that Messrs. Dubliner and Straci were in fact his attorneys and that, in any event, the privilege does not extend to communications made in furtherance of criminal activity.

 Whether Mongello is entitled to disclosure of this grand jury testimony turns on whether he has borne his burden of showing a "particularized need" outweighing the need for secrecy of the grand jury proceedings. *See United States v. Moten*, Dkt. No. 77–1324, slip op. 3097, 3112 (2d Cir. May 19, 1978). Based upon my *in camera* inspection of the grand jury

minutes of the testimony in issue, I find the balance tipped in favor of secrecy at this time, even were Messrs. Dubliner and Straci representing Mongello at the time in issue. Of course, the minutes of their respective testimony may be subsequently made available to defendant should Messrs. Dubliner and Straci testify at trial. *See United States v. Youngblood*, 379 F.2d 365 (2d Cir. 1967), and, as well, any interest Mongello may have in preserving his purported attorney-client privilege can be adequately protected at that time.

## GOLUB

Defendant Golub claims that at the time he testified before the grand jury on July 13, 1977, he was a target of its investigation into conspiracy, perjury and obstruction before the NLRB which form the basis of the conspiracy and substantive counts of the instant indictment, even though the government represented to him that his status was to the contrary. It appears to be his position that he was improperly coerced by the government into making the statements which are charged in Count 10 as perjurious before the grand jury. The logic of the position appears to be as follows: that the government was possessed of information indicating that Golub would have to either incriminate or perjure himself before the grand jury and that its failure to advise him of his target status precluded him from validly invoking his Fifth Amendment privilege against self-incrimination.

The facts as set forth in the prosecutor's affidavit in opposition to Golub's motion have been conceded as true by Golub, with one exception as testified to by Golub at the hearing on his motion, as set forth *infra.* Thus, it is undisputed that Golub was subpoenaed to testify before the grand jury and that he met with the prosecutor on two occasions; *i. e.,* July 11 and 19, 1977. The latter time he appeared with counsel. It is also clear that he was advised of his right to remain silent and that anything he said could be used against him. He also was advised of the nature of the grand jury investigation, told that the NLRB Adminis-

trative Law Judge had determined that he had lied before the NLRB, and invited to cooperate with the government. With regard to cooperation, various alternatives were discussed generally, including the possibility of immunity. Several times he was told by the prosecutor that he was not presently a target of the investigation but that no promises concerning his future status could be made. He was also apprised that the government thought his NLRB testimony was untruthful. Although at the hearing on the instant motion, Golub testified that the prosecutor had represented that the government had "witnesses" to prove that Golub had lied before the NLRB, Golub conceded that he did not know how many witnesses had testified before the grand jury before he did and that he recalled the mention of only one such witness. Indeed, the prosecutor has attested that Golub was but the second witness to testify, and that at the time of his testimony the grand jury had insufficient evidence before it to establish Golub's alleged perjury before the NLRB as required by 18 U.S.C. § 1621. The government has further attested that it was only after "insiders" came forward that Golub's status changed to that of a target and that Golub was so advised of this change by letter dated February 3, 1978. Golub was then invited to testify again but, through his attorney, declined to do so.

While it is conceded, then, that the government knew that there had been a finding that Golub had lied before the NLRB and that it agreed with that finding, it does not follow that the government improperly misrepresented Golub's status. Golub was consistently told that no promises as to his status could be made, he was adequately advised of his rights against self-incrimination and to counsel, and he was made abundantly aware of his position. Indeed, although he appeared without counsel on July 11, 1977, he reappeared with counsel on July 13 when the discussions were concluded. While the prosecutor's attestation that Golub was not a target at the time of his grand jury appearance does not foreclose the issue, *See United States v.*

*Guthrie*, Dkt. No. 76 Cr. 21, slip op. 1, 9 (S.D.N.Y. May 12, 1976) (LWP), there is ample support for accepting it as true, particularly since Golub was promptly notified of his change of status, and he was not indicted until after considerable additional evidence had been presented to the grand jury. *See United States v. Guthrie*, supra.

 In any event, it is now clear that there is no Fifth Amendment bar to the prosecution of grand jury witnesses, including those who are targets of the investigation, for perjury before the grand jury or for substantive offenses, even if those witnesses have not been advised of their Fifth Amendment rights. *United States v. Washington, supra; United States v. Wong*, 431 U.S. 174, 97 S.Ct. 1823, 52 L.Ed.2d 231 (1977); *United States v. Mandujano*, 425 U.S. 564, 96 S.Ct. 1768, 48 L.Ed.2d 212 (1976). Here, the minutes of Golub's grand jury testimony reflect that Golub was adequately advised of his Fifth Amendment right. That he chose not to exercise it is not an omission that can properly be charged to the prosecutor. "It is firmly settled that the prospect of being indicted does not entitle a witness to commit perjury, and witnesses who are not grand jury targets are protected from compulsory self-incrimination to the same extent as those who are." *United States v. Washington, supra*, 431 U.S. at 183, 97 S.Ct. at 1820. Thus, any claim that Golub was precluded from validly asserting his privilege, regardless of his status before the grand jury, is frivolous.

 To the extent that *United States v. Jacobs*, 547 F.2d 772 (2d Cir. 1976), (*cert. dismissed* —— U.S. ——, 98 S.Ct. 1873, 56 L.Ed.2d 53 (1978), would require suppression of the grand jury testimony of a "potential" or "putative" defendant who was not advised of his target status, that case is inapplicable here. The suppression of the grand jury testimony which necessitated the dismissal of Jacob's indictment was a discretionary exercise of the court's supervisory power and was not constitutionally mandated. *See United States v. Ruffin*, 575 F.2d 346, 353 n. 10 (2d Cir. 1978). It was essentially a sanction imposed for the failure of certain special attorneys, who conceded that Jacobs was "not just another witness but in fact a 'putative defendant'," *United States v. Jacobs*, 531 F.2d 87, 89 (2d Cir. 1976), *vacated and remanded*, 429 U.S. 909, 97 S.Ct. 299, 50 L.Ed.2d 277 (1976), to promote uniformity of prosecutorial practice in the same district. Here, the government does not admit that Golub was a "putative defendant" within the meaning of *Jacobs* when he testified before the grand jury. To the contrary, it insists that according to the guidelines established by the United States Attorney's office for defining a "target" to whom warnings must be given, Golub was not "a witness as to whom a decision [had] been made, prior to his . . . appearance, to seek an Indictment." Memorandum of Elkan Abramowitz and Lawrence B. Pedowitz, February 15, 1977. The good faith of the government's representation, in acting in accordance with the prosecutorial practice in this district, is reflected not only in its consistently notifying Golub of his status and its view of his truthfulness each time they communicated but also in the considerable amount of time between Golub's appearance and his indictment, during which the grand jury adduced considerable additional evidence.

Accordingly, the instant motions to dismiss the indictment, or alternatively on behalf of Mongello, to discover and inspect certain grand jury testimony, are denied.

SO ORDERED.