**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**August W. DURNIN,
Defendant–Appellant.**

**No. 80–3044.**

United States Court of Appeals,
Fifth Circuit.
Unit A

Dec. 18, 1980.

Rehearing Denied Feb. 4, 1981.

James A. McPherson, New Orleans, La., for defendant–appellant.

Mervyn Hamburg, Dept. of Justice, Washington, D.C., for plaintiff–appellee.

Before THORNBERRY, RANDALL and TATE, Circuit Judges.

THORNBERRY, Circuit Judge:

August W. Durnin appeals from his conviction on a three–count indictment that charged him with embezzlement of union funds in violation of § 501(c) of the Labor–Management Reporting and Disclosure Act

(29 U.S.C. § 501(c)).[1] We affirm the conviction.

Appellant served the International Longshoremen's Association (AFL–CIO) in two elected capacities: president of Local 1833 and a member of the Executive Board of the South Atlantic and Gulf Coast District. On the three occasions charged in the indictment, appellant received advance payments from the Local to cover his expenses in attending the District's annual conventions and then, while at these conventions, received complete reimbursements from the District for the same expenses.[2] But instead of returning the Local's advances, appellant submitted to the Local detailed expense vouchers to justify retaining the unnecessary payments. Although he admitted receiving the double reimbursements and making no formal or informal disclosure, appellant asserted that he did not realize that to retain the windfall would violate his fiduciary duty toward the members of the Local. *See* 29 U.S.C. § 501(a).

 Appellant challenges his conviction on several grounds, and we will discuss briefly each alleged error to which an appropriate objection was made below.[3]

**A. *Preindictment Delay***

 The district court denied appellant's motion to dismiss on the ground of preindictment delay. Appellant alleges that the delay denied him due process because he lost the testimony of an important witness in the interim between when the government could have brought an indictment and when it finally chose to do so.[4] However, to establish a violation of the Due Process Clause in this context, appellant must show, not only substantial prejudice flowing from an inordinate delay, but also a motive on the part of the prosecutor to use the delay to gain a tactical advantage. *United States v. Lovasco*, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977); *United States v. Marion*, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971); *United States v. Willis*, 583 F.2d 203 (5th Cir. 1978). Appellant does not contend that the government sought to delay his indictment for tactical advantage, and the district court specifically found that the delay resulted from the government's good–faith attempt to ascertain appellant's guilt beyond a reasonable doubt. Trial Transcript, vol. 3, at 78. Since this finding is abundantly supported

1. Section 501(c) provides:
 Any person who embezzles, steals, or unlawfully and willfully abstracts or converts to his own use, or the use of another, any of the moneys, funds, securities, property, or other assets of a labor organization of which he is an officer, or by which he is employed, directly or indirectly, shall be fined not more than $10,000 or imprisoned for not more than five years, or both.

2. The indictment charged appellant with embezzling approximately $1000.00 in 1974 (count one), $850.00 in 1976 (count two), and $956.00 in 1977 (count three).

3. Trial counsel failed to object to the admission of testimony concerning appellant's offer to plead guilty, *see* F.R.Cr.P. 11(e)(6), and thus our review of the alleged error is governed by the plain error standard. *See* F.R.Cr.P. 52(b); *United States v. Habel*, 613 F.2d 1321 (5th Cir. 1980). Since appellant initiated the offer during the investigatory stage to an F.B.I. agent with no control over plea negotiations, the admission of the offer was not plain error, if error at all. *See United States v. Levy*, 578 F.2d 896 (2d Cir. 1978); *United States v. Robertson*, 582 F.2d 1356 (5th Cir. 1978) (en banc). Similarly,

counsel objected for the first time here on appeal to a portion of the government's closing argument· to the jury in which the prosecutor expressed his personal belief that appellant had lied on the witness stand. Because the court gave a curative instruction and because the prosecutor did not convey the impression that he possessed private, extrinsic information supporting his belief, the statement did not constitute reversible error. *See United States v. Siegel*, 587 F.2d 721 (5th Cir. 1979); *United States v. Tanda*, 568 F.2d 1122 (5th Cir.), cert. denied, 436 U.S. 961, 98 S.Ct. 3081, 57 L.Ed.2d 1128 (1978).

4. Testimony showed that the government knew as early as 1973 about appellant's practice of receiving double reimbursements, received appellant's offer to plead guilty in June of 1978, but refrained from indicting until June 13, 1979. Mr. Warner Brock, the Executive Board's general counsel, died in early 1979. Appellant contends that he relied on Mr. Brock's erroneous advice that § 501(c) was not intended to render the receipt of double reimbursements unlawful.

by the record, the district court's ruling on the motion to dismiss must be affirmed.

## B. Sufficiency of the Evidence

 Section 501(c) does not render union officials strictly liable for the misuse of union funds. The misuse must be coupled with a fraudulent intent to deprive the union of its funds. *See United States v. Dixon*, 609 F.2d 827 (5th Cir. 1980); *United States v. Rubin*, 591 F.2d 278 (5th Cir.), *cert. denied*, 444 U.S. 864, 100 S.Ct. 133, 62 L.Ed.2d 87 (1979); *United States v. Nell*, 526 F.2d 1223 (5th Cir. 1976); *United States v. Goad*, 490 F.2d 1158 (8th Cir.), *cert. denied*, 417 U.S. 945, 94 S.Ct. 3068, 41 L.Ed.2d 665 (1974); *United States v. Silverman*, 430 F.2d 106 (2d Cir.), *modified on other grounds*, 439 F.2d 1198 (2d Cir. 1970). Although courts have grappled with distinctions between authorized and unauthorized use cases, *see, e. g., Silverman, supra*, it is clear that fraudulent intent to misuse the funds is the cornerstone of the crime in either context.[5] It is this element of fraudulent intent that appellant claims the government failed to establish at trial.

 Viewing the evidence in the light most favorable to the government, *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), the government established that: (1) a Department of Labor investigator informed appellant as early as 1973 that the receipt of double reimbursements was unlawful, (2) appellant admitted to three F.B.I. agents on two separate occasions that he knew his conduct was wrong, and (3) appellant failed to disclose the excess income on his tax returns. This evidence, not to mention the common–sense inferences from appellant's conduct itself, is certainly sufficient to support the jury's conclusion that appellant retained the excess reimbursements with the requisite intent to defraud his Local.

## C. Sufficiency of the Court's Charge to the Jury

 1. Appellant argues that the following portion of the court's instructions to the jury was improper:

A union official cannot be acting in "good faith" by not following his own union's procedures regarding the authorization or expenditure of funds. An elected union official must know the proper procedure for conducting his union's business.

Appellant's counsel made timely objection to this charge on the ground that it "dilutes the specific intent requirement." Trial Transcript, vol. 5, at 477.• We agree. By apparently erecting an objective criterion (*i. e.* unauthorization) for conclusively ascertaining appellant's subjective state of mind (*i. e.* good or bad faith), the court implied that the jury could convict appellant merely for not following the proper authorization procedures of his union.

This improper suggestion of strict liability, however, is forcefully contradicted in almost every other section of the charge. For example, the court instructed that the "willing acceptance of union funds by a recipient who knows that such funds are unauthorized and illegal would constitute a violation of Section 501(c) where the requisite criminal intent is present." Trial Transcript, vol. 5, at 467.[6] The judge explicitly and repeatedly stated that "the crime charged in this case requires proof of specif-

---

**5.** Since the government thoroughly established appellant's fraudulent intent to deprive the local of its funds, we find it unnecessary to characterize this case as one of either authorized or unauthorized use.

**6.** The court additionally charged:

Let me further say, however, that the government must prove more than mere breach of a fiduciary obligation. Criminal intent, as I have defined it for you, is an element of the offense charged, and in order to establish a violation of Section 501(c), the prosecution must prove beyond a reasonable doubt that the defendant willfully took union funds, with knowledge that such payments were not authorized according to the union's Constitution, Bylaws or resolutions. ·For example, a negligent, accidental, or other innocent breach of a fiduciary obligation might result in civil liability, but it would not be a violation of this law, because of the requisite–because the requisite criminal intent would be lacking.

Trial Transcript, vol. 5, at 468.

ic intent" and defined "specific intent" in intelligible detail. Thus viewing the challenged portion of the instructions in light of the whole charge, see, e. g., United States v. McCoy, 539 F.2d 1050 (5th Cir. 1976), cert. denied, 431 U.S. 919, 97 S.Ct. 2185, 53 L.Ed.2d 230 (1977), we can only conclude that the court adequately instructed the jury on the elements of the offense in general and on the element of fraudulent intent in particular. Accord United States v. Rubin, 591 F.2d 278 (5th Cir. 1979), cert. denied, 444 U.S. 864, 100 S.Ct. 133, 62 L.Ed.2d 87 (1980).[7]

2. Appellant's second objection to the court's instructions focuses on its refusal to instruct that reliance on the advice of counsel constitutes a defense insofar as it negates fraudulent intent. See, e. g., United States v. Crum, 529 F.2d 1380 (9th Cir. 1976); United States v. Smith, 523 F.2d 771 (5th Cir. 1975); United States v. Custer Channel Wing Corp., 376 F.2d 675 (4th Cir.), cert. denied, 389 U.S. 850, 88 S.Ct. 38, 19 L.Ed.2d 119 (1967). With the exception of appellant's own thoroughly controverted testimony, however, there is no evidence in the record that he either sought the advice of counsel, personally received advice after full disclosure, or followed the advice in good faith.

 Appellant testified that on two occasions, once in 1974 and again in 1977, he questioned Warner Brock about the legality of receiving double reimbursements. Before his death in 1979, Mr. Brock was general counsel for the District's Executive Board. According to appellant, Mr. Brock told him on both occasions that his conduct was not unlawful so long as he reported the excess income on his tax returns. But even if we were to believe that appellant might have sought and received this erroneous advice from Mr. Brock, there is nothing in the record to indicate that he informed Mr. Brock of, inter alia, his nondisclosure of the double reimbursements. Moreover, appellant's own testimony reveals that he did not declare the income on his tax returns and thus that he did not follow the alleged advice in fact, much less in good faith. Thus, since the record failed to show adequate evidentiary support for the instruction, the district court did not abuse its discretion in refraining from charging the jury on advice of counsel. See United States v. Kahn, 381 F.2d 824 (7th Cir.), cert. denied, 389 U.S. 1015, 88 S.Ct. 591, 19 L.Ed.2d 661 (1967).[8]

### D. Excluded Testimony

Appellant attempted to prove at trial that the Local "authorized" his double reimbursements by showing that several members of the Local knew about and acquiesced in his misuse of their funds. George Dupeire, a member of the Local, testified for the defense that it was "com-

---

**7.** Appellant argues that our recent decision in United States v. Dixon, 609 F.2d 827 (5th Cir. 1980) requires us to reverse his conviction. Although it is true that the trial court in Dixon gave the same erroneous instruction given in this instance, we reversed on other grounds. In Dixon the trial court additionally instructed the jury that "[u]nder the circumstances of this case, 'good faith' cannot include … spending Union funds thinking it proper since the Union would benefit from the expenditure." Id. at 829 n.1. Significantly, this improper instruction was not given here. Nor did the court below fail, as did the court in Dixon, id. at 829, to adequately convey in the totality of its charge the proper standard for identifying "unauthorization."

**8.** Appellant contends that if the record fails to show adequate evidentiary support for his claim, then the failure is due in part to the court's disallowance of certain surrebuttal testimony. To rebut appellant's advice of counsel assertion, the government called F.B.I. agent James Magee to testify that Mr. Brock informed him that he never directly advised appellant on the matter, but that appellant could have overheard similar advice which he gave to others prior to 1973. Since this rebuttal testimony raised no new issue and since the proffered surrebuttal witnesses were not able to rebut the essence of Mr. Magee's testimony, the district court's decision to disallow surrebuttal was not an abuse of discretion. See United States v. Winkle, 587 F.2d 705 (5th Cir.), cert. denied, 444 U.S. 827, 100 S.Ct. 51, 62 L.Ed.2d 34 (1979); United States v. Sadler, 488 F.2d 434 (5th Cir.), cert. denied, 417 U.S. 931, 94 S.Ct. 2642 (1974); United States v. Doe, 488 F.2d 93 (5th Cir. 1973), cert. denied, 416 U.S. 991, 94 S.Ct. 2400, 40 L.Ed.2d 769 (1974).

mon knowledge" that appellant received money from the District. Trial Transcript, vol. 5, at 336. The witness did not testify, however, that he knew the amounts of these payments or whether the payments constituted reimbursements from the District for the same expenses reimbursed by the Local. The district court sustained the government's objection to appellant's attempt to demonstrate this "common knowledge" through the testimony of two other members of the Local. Defense counsel's proffer, however, reveals that they were no more able than Mr. Dupeire to attest to knowledge of double reimbursements. Rather, like Mr. Dupeire, they were merely aware that he was receiving some money from the District.[9]

 The district court sustained the objection on the ground that the membership's knowledge was irrelevant to the issue of authorization. The court reasoned that since union members are statutorily barred from exonerating improper expenditures through a general exculpatory resolution, see 29 U.S.C. § 501(a), then it follows, a fortiori, that mere acquiescence in the misuse cannot serve to authorize it. We find the court's logic unassailable vis-a-vis the issue of whether the funds were authorized in fact. In Dixon, supra, we stated, however, that "the use of funds is only unauthorized if the defendant had actual knowledge that the expenditures were not properly authorized." 609 F.2d at 829. Consequently, although the membership could not authorize the misuse as an objective matter, their acquiescence could perhaps lead a union official to believe that his abuses were authorized.

 Thus, if appellant could have shown that the membership knew he was receiving double payments for single expenses, then their testimony might have helped to negate his knowledge that the funds were unauthorized and thus, in light of Dixon,

have helped to establish "authorization." Since appellant's witnesses were not able to testify that they or the membership knew that appellant had received and retained double reimbursements, the district court correctly ruled their testimony irrelevant to the issue of authorization.

Accordingly, the judgment is AFFIRMED.

---

9. Appellant received an "allowance" of $433.00 per month from the District in addition to reimbursements for convention expenses. Thus it is not surprising that the Local's membership would know that he was receiving money from the District. The fact is, however, that there is no evidence that anyone other than appellant knew specifically that he was being reimbursed by the District for the identical expenses vouchered to the Local.