**UNITED STATES of America, Plaintiff,**

v.

**John F. DUFF and Howard Hansen, Defendants.**

**Nos. 81 CR 475, 81 CR 589.**

United States District Court, N. D. Illinois, E. D.

Nov. 20, 1981.

On Motion To Dismiss Indictment Nov. 25, 1981,

Mark Vogel, Asst. Chicago Strike Force Atty., Chicago, Ill., for plaintiff.

John Powers Crowley, Chicago, Ill., for Duff.

William Martin, Chicago, Ill., for Hansen.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Defendants John F. Duff and Howard Hansen were indicted by a federal grand jury for violations of §§ 501(c) and 209(c) of the Labor Management Reporting and Disclosure Act of 1959. 29 U.S.C. § 501(c);[1] 29 U.S.C. § 439(c).[2] This action is presently before the Court on defendants' motion to dismiss the charges.[3] For the reasons set forth below, that motion will be denied.

The indictment and information charge that at the time of the alleged offenses Duff was Vice-President of the Distillery, Wine and Allied Workers International Union, Secretary-Treasurer of the Chicago Local 3 and Special Representative of the International Union assigned to oversee the affairs of Detroit Local 42 and that Hansen was President of the Chicago Local 3. Duff is charged with converting approximately $76,607.14 from Locals 3 and 42, in violation of § 501(c), through an unauthorized salary increase, unauthorized expense payments, abstraction of checks from Local's bank account, and a political contribution. Hansen is similarly charged with converting approximately $9,735 from Local 3, in violation of § 501(c), through an unauthorized salary increase. In addition, both defendants are accused of diverting approximately $17,457 in dues checkoff monies from Local 42 to Local 3 in violation of § 501(c) and of making a false entry in a record of Local 3, in violation of § 439(c), regarding the purported approval by the executive board in obtaining a $75,000 loan to purchase furniture and remodel Local 3's office space.

Defendants have moved to dismiss the charges on the grounds that they are vague and indefinite, fail to inform them of the accusations with the specificity required by law and make it impossible for them to prepare a defense or to plead double jeopardy in the future. The motion also alleges that federal jurisdiction is lacking, and that the charges violate Rule 7 of the Federal Rules of Criminal Procedure as well as the Sixth Amendment to the Constitution.

Rule 7(c)(1) of the Federal Rules of Criminal Procedure provides that an indictment or information "shall be a plain, concise and definite written statement of the essential facts constituting the offense charged.... It need not contain ... any other matter not necessary to such statement...."[4] In evaluating the sufficiency of an indict-

---

1. Section 501(c) provides:

   Any person who embezzles, steals, or unlawfully and willfully abstracts or converts to his own use, or the use of another, any of the moneys, funds, securities, property, or other assets of a labor organization of which he is an officer, or by which he is employed directly or indirectly, shall be fined not more than $10,000 or imprisoned for not more than 5 years, or both.

2. Section 439(c) provides:

   Any person who willfully makes a false entry in or willfully conceals, withholds, or destroys any books, records, reports or statements required to be kept by any provision of this subchapter shall be fined not more than $10,000 or imprisoned for not more than one year, or both.

3. A nine-count indictment (No. 81 CR 475) was returned by the grand jury on September 2, 1981. On October 16, 1981, a one-count information (No. 81 CR 589) was filed by the government, charging Hansen with a violation of 29 U.S.C. 439(c). The information has been consolidated with the indictment for trial.

4. In general, the Federal Rules of Criminal Procedure "were designed to eliminate technicalities in criminal pleading and are to be construed to secure simplicity in procedure." *United States v. Debrow*, 346 U.S. 374, 376, 74 S.Ct. 113, 114, 98 L.Ed. 92 (1953). Rule 7(c)(1), in particular, is designed to fulfill the constitutional requirements imposed by the Fifth and Sixth Amendments. The Fifth Amendment establishes the right to due process and guarantees that no person shall be prosecuted for a serious crime "unless on ... [an] indictment by a Grand Jury." Similarly, the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to be informed of the nature and cause of the accusation" against him so that he can prepare a defense.

ment,[5] common sense and reason prevail over technicalities. *United States v. Willis*, 515 F.2d 798, 800 (7th Cir. 1975); *United States v. Climatemps*, 482 F.Supp. 376, 382 (N.D.Ill.1979) *citing Parsons v. United States*, 189 F.2d 252, 253 (5th Cir. 1951). Thus, an indictment is sufficient if it, "first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974).

### Section 501(c) Counts

Counts One through Eight of the indictment charge one or both defendants with violations of 29 U.S.C. § 501(c). Each of these counts specifically allege the approximate date of the transaction, the dollar amount involved, and that the entity unlawfully deprived of its assets was a "labor organization" engaged in an industry affecting commerce within the meaning of 29 U.S.C. §§ 402(i) and 402(j).[6] Each count tracks the language of § 501(c), which has been held "to cover almost every kind of taking, whether by larceny, theft, embezzlement or conversion." *United States v. Harmon*, 339 F.2d 354, 357 (6th Cir. 1964), *cert. denied*, 380 U.S. 944, 85 S.Ct. 1025, 13 L.Ed.2d 963, *reh. denied*, 380 U.S. 989, 85 S.Ct. 1330, 14 L.Ed.2d 282.

■ Defendants argue that mere repetition of statutory language does not suffice to meet the constitutional requirements, relying heavily on *Russell v. United States*, 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962).[7] However, "[i]t is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense meant to be punished." *Hamling v. United States*, 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974). Unlike in *Russell*, where a factual definition is crucial to an adequate description of a statutory element of proof, the instant indictment charges the defendants with crimes adequately described by legal words of art which do not vary in meaning from case to case. The statutory terms "embezzles, steals, or unlawfully and willfully abstracts or converts to his own use" in § 501(c) have a common legal meaning, requiring little or no factual amplification. *Hubbard v. United States*, 79 F.2d 850, 852 (9th Cir. 1935) (the term "embezzle" has a settled technical meaning); *United States v. Northway*, 120 U.S. 327, 334–335, 7 S.Ct. 580, 584, 30 L.Ed. 664 (1887) (the term "abstract" is a word of "simple, popular meaning, without ambiguity"); *United States v. Santiago*, 528 F.2d 1130, 1135 (2d Cir. 1976), *cert. denied*, 425 U.S. 972, 96 S.Ct. 2169, 48 L.Ed.2d 795 (conversion "to his own use" means simply "not to the use of the entruster"). The instant indictment not only tracks the statutory language, but also sets forth the factual

---

5. In this opinion when, in discussing requisites for a valid charge, reference is made to the term "indictment," we are also, of course, discussing standards for a proper information.

6. Defendants argue that the indictment fails to allege sufficient facts to establish federal jurisdiction. However, "the use of the words 'labor organization' in the statutory section defining the criminal offense involved necessarily implies the fact that the labor organization is engaged in an industry affecting commerce pursuant to 29 U.S.C. § 402(i), so the use of that term of art in the indictment necessarily implies that the essential element of interstate commerce is charged in the indictment." *United States v. Silverman*, 430 F.2d 106, 111 (2d

Cir. 1970), *modified on other grounds*, 439 F.2d 1198 (1970), *cert. denied*, 402 U.S. 953, 91 S.Ct. 1619, 29 L.Ed.2d 123, *reh. denied*, 403 U.S. 924, 91 S.Ct. 2227, 29 L.Ed.2d 704; *accord United States v. Ford*, 462 F.2d 199 (7th Cir. 1972).

7. *Russell* involved an indictment under 2 U.S.C. § 192 which charged that the defendants had refused to answer questions "pertinent" to an undefined issue under inquiry by a congressional committee. The specific subject matter under congressional inquiry is central to any prosecution under § 192. Therefore, the lack of factual information rendered the indictment defective.

details evidencing the crimes.[8] In light of the fact that the instant indictment charges these legal terms in the conjunctive, the defendants are placed in jeopardy as to all means of committing the named offenses. The sum of the allegations contained in the indictment, both factual and legal, gives adequate notice to the defendants of the offenses being charged.[9]

The government has followed the judicially accepted format in drafting the instant indictment. The First Circuit stated in *Colella v. United States*, 360 F.2d 792 (1st Cir. 1966): "Section 501(c) establishes a new federal crime of embezzlement of any funds of a labor organization. The new crime can be accomplished in one of four ways: embezzling, stealing, unlawfully and willfully abstracting, and unlawfully and willfully converting . . . as far as the defendant is concerned, he has been placed in jeopardy with respect to all means of committing the offense by the proper manner of substitution in the indictment of the conjunctive 'and' for the statutory distinctive 'or.'" *Colella, supra* at 799–800. Another indictment containing virtually identical language as the § 501(c) counts herein was upheld by the Second Circuit. There, the court stated, "The events described in the indictment were quite specific as to the dates of the transactions, the amounts involved and the parties from whom the funds were taken. Such allegations were sufficient to guard against giving improper discretion to the court and prosecutor to

vary the trial proof from the theory upon which the indictment is based . . . no one could suppose that the prosecutor would be free to roam at large in proving elements of the crime so explicitly stated." *United States v. Silverman*, 430 F.2d 106, 111–112 (2d Cir. 1970), *modified on other grounds*, 439 F.2d 1198 (1970), *cert. denied*, 402 U.S. 953, 91 S.Ct. 1619, 29 L.Ed.2d 123, *reh. denied*, 403 U.S. 924, 91 S.Ct. 2227, 29 L.Ed.2d 704.

■ The defendants also argue that the indictment is defective because it fails to allege whether their various alleged takings were authorized or unauthorized.[10] While there is confusion among the various circuits regarding the elements of the 501(c) offense, the underlying concern of most courts is that the essential element of fraudulent intent is clearly charged in the indictment.[11] The existence or non-existence of authorization is more related to the issue of sufficiency of the evidence than to validity of the indictment itself. *See Silverman, supra*, 430 F.2d at 114–115. The Ninth Circuit held that "neither a lack of union authorization nor an absence of good faith belief in union benefit need be alleged in an indictment as essential elements of § 501(c). . . ." *United States v. Thordarsen*, 646 F.2d 1323, 1332 (9th Cir. 1981). Concisely stated, "fraudulent intent to misuse funds is the cornerstone of a § 501(c) crime." *United States v. Durnin*, 632 F.2d 1297, 1300 (5th Cir. 1980).

8. The indictment describes the alleged embezzlements, thefts, conversions, and/or abstractions as having been accomplished through unauthorized salary increases, unauthorized expense payments, abstraction of checks from Local's bank accounts, and a political contribution.

9. The Seventh Circuit upheld an analogous indictment stating it "not only charges him in the language of the statute with being an officer of and employed by a labor organization and embezzling its funds, but it also particularizes by alleging the specific office . . ." *United States v. Ford*, 462 F.2d 199 (7th Cir. 1972). The instant indictment alleges that both defendants were officers of the union as well as being employed by the union.

10. However, Counts One and Two charge the defendants with taking an "unauthorized salary increase," and Counts Seven and Eight charge defendant Duff with taking "unauthorized expense payments." Accordingly, the Court's discussion of this issue is limited to Counts Three through Six.

11. *See United States v. Thordarsen*, 646 F.2d 1323, 1337 (9th Cir. 1981); *Colella v. United States*, 360 F.2d 792, 798–799 (1st Cir. 1966), *cert. denied*, 385 U.S. 829, 87 S.Ct. 65, 17 L.Ed.2d 65; *United States v. Durnin*, 632 F.2d 1297, 1300 (5th Cir. 1980); *United States v. Ottley*, 509 F.2d 667, 671 (2d Cir. 1975); *United States v. Bane*, 583 F.2d 832, 835–36 (6th Cir. 1978), *cert. denied*, 439 U.S. 1127, 99 S.Ct. 1044, 59 L.Ed.2d 88.

In the case at bar, the indictment adequately alleges the defendants' fraudulent intent through the statutory terms, "did embezzle, steal, and unlawfully and willfully abstract and convert." *United States v. Willis,* 515 F.2d 798, 799–800 (7th Cir. 1975) (the word embezzle connotes to both lawyers and laymen that the act was performed with wrongful intent); *United States v. Minick,* 636 F.2d 181, 184 (7th Cir. 1980) (the term "convert" implies "some kind of willful purpose and wrongful intent in the taking of property not belonging to the converter"). *See also Thordarsen, supra* at 1337; *Colella, supra* at 798–799. Therefore, Counts One through Eight adequately inform the defendants of the charges against them in accordance with Rule 7(c)(1) of the Federal Rules of Criminal Procedure.

### Section 439(c) Counts

■ Count Nine of the indictment and the information adequately charge the defendants with willfully making and causing a false entry to be made in a record of Local 3, a labor organization engaged in an industry affecting commerce within the meaning of 29 U.S.C. §§ 402(i) and 402(j).[12] Both charges specify the approximate date when the false entry was made, the exact union record in which it was made, and that the record was required to be kept by Local 3 under 29 U.S.C. §§ 436 and 431. In addition, both charges recite 29 U.S.C. § 439(c)

as the statute violated. When read together with §§ 436 and 431, § 439(c) "requires that no false statement or omission be made on any of those records [and thus the sections] provide a readily ascertainable standard of conduct that clearly delineates the proscribed activity. The statute is neither overly broad nor vague and gives fair notice of its prohibitions." *United States v. Budzanoski,* 462 F.2d 443, 452 (3d Cir. 1972). Therefore, Count Nine of the indictment and the information allege the applicable elements of § 439(c) with sufficient specificity to inform the defendants of the offenses charged and to enable them to avoid double jeopardy. *United States v. Haggerty,* 419 F.2d 1003, 1007–1009 (7th Cir. 1970), *cert. denied,* 397 U.S. 1064, 90 S.Ct. 1502, 25 L.Ed.2d 686.

Accordingly, the defendants' motion to dismiss the charge is denied. It is so ordered.

### ON MOTION TO DISMISS INDICTMENT

Defendants John Duff and Howard Hansen were indicted by the Special September 1978 Grand Jury on charges of embezzlement of union funds.[1] Defendants have moved to dismiss the indictment,[2] alleging that the Assistant United States Attorney's manner of questioning Hansen during the grand jury proceedings deprived both Duff

---

12. This is an adequate allegation of jurisdiction. *See* footnote 6, *supra.*

1. A nine-count indictment (No. 81 CR 475) was returned by the grand jury on September 2, 1981. On October 16, 1981, a one-count information (No. 81 CR 589) was filed by the government, charging Hansen with a violation of 29 U.S.C. 439(c). The information has been consolidated with the indictment for trial.

The indictment and information charge that at the time of the alleged offenses Duff was Vice-President of the Distillery, Wine and Allied Workers International Union, Secretary-Treasurer of the Chicago Local 3 and Special Representative of the International Union assigned to oversee the affairs of Detroit Local 42 and that Hansen was President of the Chicago Local 3. Duff is charged with converting approximately $76,607.14 from Locals 3 and 42, in violation of § 501(c), through an unauthorized salary in-

crease, unauthorized expense payments, abstraction of checks from Local's bank account, and a political contribution. Hansen is similarly charged with converting approximately $9,735 from Local 3, in violation of § 501(c), through an unauthorized salary increase. In addition, both defendants are accused of diverting approximately $17,457 in dues checkoff monies from Local 42 to Local 3 in violation of § 501(c) and of making a false entry in a record of Local 3, in violation of § 439(c), regarding the purported approval by the executive board in obtaining a $75,000 loan to purchase furniture and remodel Local 3's office space.

2. Although characterized as a motion to dismiss the indictment, the Court will treat this motion as going to the information (which is a "fruit" of the indictment) as well. *See* footnote 1, *supra.*

and Hansen of the fair and impartial grand jury determination to which they are entitled. In the alternative, defendants have moved this Court to order the production of all transcripts of testimony and documents related to their indictment in order to permit them to support further their allegations of prosecutorial misconduct and grand jury abuse.

### A. *Motion to Dismiss Indictment Based Upon Grand Jury Abuse*

■ It is essential to the constitutional underpinnings of our criminal justice system that grand jury proceedings be carried out in such a manner as to avoid impartiality and prejudice. In order to assure fairness of grand jury proceedings, district courts are vested with supervisory power to dismiss indictments when, *inter alia*, prosecutorial misconduct has or might have interfered with the fairness and impartiality of the grand jury. *See, e.g., United States v. Gold*, 470 F.Supp. 1336 (N.D.Ill.1979). The dismissal of an indictment is, however, a sanction that is "extraordinary" and that should be "reserved for only the most serious abuses." *United States v. Disston*, 582 F.2d 1108, 1112 (7th Cir. 1978). *See also, United States v. Fields*, 592 F.2d 638 (2d Cir.), *cert. denied*, 442 U.S. 917, 99 S.Ct. 2838, 61 L.Ed.2d 284 (1979) (failure to disclose exculpatory information insufficient to justify dismissal); *United States v. Riccobene*, 451 F.2d 586 (3d Cir. 1971) (statement by prosecutor that certain witnesses could not testify because the defendants had underworld connections who might harm those witnesses insufficient to justify dismissal).

Defendants have moved the Court to exercise this extraordinary remedy. They contend that during grand jury proceedings the Assistant United States Attorney improperly questioned and commented upon Hansen's reliance on his fifth amendment right against self-incrimination, thereby inflaming and prejudicing the grand jury against both defendants. Specifically, defendants complain that the prosecutor repeatedly questioned Hansen concerning matters beyond the scope of his subpoena and thereby "forced" Hansen to invoke his fifth amendment right against self-incrimination some fifty-six times. Defendants assert that such questioning was calculated to prejudice the grand jury against Hansen and Duff. Moreover, defendants contend that prosecutorial queries into Hansen's good faith belief that answering certain questions would incriminate him "demean[ed] and ridicule[d]" Hansen's reliance on the fifth amendment.

■ Our examination of the grand jury transcript, however, does not support defendants' portrayal of the prosecutor's conduct. True, Hansen invoked the fifth amendment numerous times. And the prosecutor should have recognized at some point in the examination that his questions would not be answered with anything beyond a reference to the fifth amendment. But just as it is not misconduct to call a witness with the knowledge that he might invoke the fifth amendment, *United States v. Wolfson*, 405 F.2d 779, 784 (2d Cir. 1968), *cert. denied*, 394 U.S. 946, 89 S.Ct. 1275, 22 L.Ed.2d 479 (1969); *United States v. Cefalu*, 338 F.2d 582 (7th Cir. 1964); *United States v. Isaacs*, 347 F.Supp. 743 (N.D.Ill.1972), it is not improper to examine a witness knowing that he will rely on the fifth amendment. *United States v. Horowitz*, 452 F.Supp. 415 (S.D.N.Y.1978). As the Supreme Court stated in *United States v. Mandujano*, 425 U.S. 564, 570, 96 S.Ct. 1768, 1773, 48 L.Ed.2d 212 (1976), to be protected by the fifth amendment right against self-incrimination, "[t]he witness must invoke the privilege ... as the 'Constitution does not forbid the asking of criminative questions,'" *quoting from United States v. Monia*, 317 U.S. 424, 433, 63 S.Ct. 409, 413, 87 L.Ed. 376 (1943) (Frankfurter, J., dissenting).[3]

---

3. The parties argue at some length as to whether Hansen's invocations of the fifth amendment were justified. We, however, do not deem it necessary to determine the breadth of Hansen's fifth amendment right; the Court assumes, for the purposes of this motion, that each of Hansen's assertions of the fifth amendment was entirely appropriate.

Although the Assistant United States Attorney—perhaps too persistently—inquired into Hansen's good faith belief that his answers to certain questions would incriminate him, his conduct fell short of a prejudicial haranguing of the witness concerning his invocation of the fifth amendment. Furthermore, there is nothing in the transcript to show that the prosecutor badgered Hansen into answering questions or threatened him.[4]

The Assistant United States Attorney's actions in this cause—although a bit overzealous—do not come close to the type of conduct which has convinced other courts to dismiss grand jury indictments. Thus, this is not a case like *United States v. DiGrazia*, 213 F.Supp. 232 (N.D.Ill.1963), wherein a grand jury indictment was dismissed due to prosecutorial challenges to the witness' refusal to answer questions and threats to bring the witness before a judge to compel answers. Similarly, there has been no suggestion that there was an unauthorized person in the grand jury room, as in *United States v. Gold*, 470 F.Supp. 1336 (N.D.Ill. 1979); that the prosecuting attorney's questions insinuated that the witness was lying, as in *United States v. Samango*, 607 F.2d 877 (9th Cir. 1979); that the prosecutor asked unfounded questions based on half-truths, as in *United States v. Serubo*, 604 F.2d 807 (3d Cir. 1979); that the prosecutor was blatantly hostile, making derogatory comments and demanding "yes" or "no" answers to complex questions, as in *United States v. Sears, Roebuck and Co.*, 518 F.Supp. 179 (C.D.Cal.1981); that the prosecutor asked deliberately misleading questions and failed to disclose exculpatory evidence, as in *United States v. Lawson*, 502 F.Supp. 158 (D.Md.1980); or that the prosecutor failed to provide exculpatory evidence after explicitly promising the grand jury to do so, as in *United States v. Roberts*, 481 F.Supp. 1385 (C.D.Cal.1980).

■ In the instant cause, the Assistant United States Attorney's commentary on Hansen's invocation of the fifth amendment does not serve as a model for the scrupulously fair-minded prosecutor. Once Hansen had knowingly and unequivocally expressed his intention to invoke his fifth amendment rights, inquiries into his good faith in so doing are understandably suspect. Nevertheless, these colloquies and the general thrust of the examination of Hansen do not approach the type of flagrant abuse required to justify dismissal of an indictment. For these reasons, the defendants' motion to dismiss the grand jury indictment is denied. It is so ordered.

### B.  *Motion To Produce*

■ It is the general rule that grand jury transcripts should not be disclosed. Fed.R. Crim.Pro. 6(e). Secrecy of grand jury proceedings serves to encourage the unhampered investigation of criminal charges and to protect the innocent from negative inferences that might be drawn from the mere initiation of grand jury proceedings. *United States v. Proctor & Gamble*, 356 U.S. 677, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958). Moreover, this interest in grand jury secrecy is not eliminated simply because the grand jury proceeding is completed. *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 222, 99 S.Ct. 1667, 1675, 60 L.Ed.2d 156 (1979).

The general rule of secrecy of grand jury transcripts is not, of course, inviolate. Fed. R.Crim.Pro. 6(e) provides that a court may allow disclosure of grand jury transcripts to a defendant "upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury." Nevertheless, it is only "in rare situations [that the court] may have some discretion to slip entirely around Rule 6(e) and permit disclosure, but that discretion in any event is limited." *In Re: The Special February 1975 Grand Jury, The Special April, 1977 Grand Jury, Appeal of:*

---

4.  Indeed, after Hansen invoked the fifth amendment when asked whether he honestly believed that answering certain questions might incriminate him, the Assistant United States Attorney remarked that "I would assume by that answer that, in fact, you do have that honest belief." (Grand Jury Transcript at 2).

*James E. Baggot,* 652 F.2d 1302, 1305 (7th Cir. 1981). A "showing" under Fed.R.Crim. Pro. 6(e) must be based on a particularized need for disclosure of the transcript, *Douglas Oil,* 441 U.S. at 212, 99 S.Ct. at 1669; mere speculation that prosecutorial abuse may have occurred is insufficient. *United States v. Edelson,* 581 F.2d 1290, 1291 (7th Cir. 1978), *cert. denied,* 440 U.S. 908, 99 S.Ct. 1216, 59 L.Ed.2d 456 (1979); *United States v. Mahoney,* 495 F.Supp. 1270, 1273 (E.D.Pa.1980).

▪ Defendants contend that the prosecutorial conduct complained of in their motion to dismiss constitutes a "showing" under Fed.R.Crim.Pro. 6(e) that additional grounds may exist in other portions of the transcript to support their motion. However, defendants offer nothing more than a speculative assertion that other portions of the grand jury transcript may reveal prosecutorial misconduct that would support a motion to dismiss. The sole evidence they offer in support of this assertion is Hansen's grand jury transcript, already determined in this opinion as not warranting dismissal of the indictment.

▪ Although defendants have not made a sufficient showing, pursuant to Rule 6(e), to support disclosure to them of grand jury transcripts, as indicated above, Hansen's transcript does demonstrate a questionable degree of zealousness—of itself short of misconduct—on the part of the Assistant United States Attorney before the grand jury. For this reason, we are of the view that it would be prudent for the Court to review the transcripts of other witnesses before the grand jury. This action by the Court will not unfairly jeopardize the government's prosecution, but at the same time will serve to assure that defendants' rights were not compromised during the grand jury proceeding. Accordingly, the Court, under its inherent supervisory authority, will examine *in camera* the tran-

scripts of other witnesses who testified in regard to the subject matter of the instant charges before the September 1978 Grand Jury. *United States v. Edelson,* 581 F.2d 1290, 1291–1292 (7th Cir. 1978); *United States v. Pollard,* 441 F.2d 566, 568 (7th Cir. 1971).

For the foregoing reasons, defendants' motion for production and inspection of grand jury testimony and documents is denied, and the government is directed to file with the Court sealed copies of transcripts of the other grand jury witnesses forthwith. Should this Court's inspection reveal evidence of grand jury abuse, an appropriate order will be entered.[5] It is so ordered.

---

**5.** Although defendants have not requested an evidentiary hearing on their motion to dismiss, their memorandum in support of the motion for production suggests that the Court on its own motion may wish to conduct such a hearing. However, since the conduct complained of—

the questioning of Hansen—is clear from the face of the transcript, such a hearing is not required at this time. Should the Court's *in camera* inspection justify the conduct of an evidentiary hearing, it will be so ordered.