**TIGAR & BUFFONE, Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF JUSTICE, Defendant.**

**Civ. A. No. 80–2382.**

United States District Court, District of Columbia.

July 26, 1984.

John J. Privitera, Washington, D.C., for plaintiff.

J. Brian Ferrel, Michael J. Salem, U.S. Dept. of Justice, Washington, D.C., for defendant.

## MEMORANDUM OPINION

BARRINGTON D. PARKER, District Judge.

This is an action under the Freedom of Information Act (FOIA), 5 U.S.C. § 552. Plaintiff, the law firm of Tigar & Buffone, seeks from the defendant, the Department of Justice (DOJ), documents relating to the Bahamian bank known as "Castle Bank" which the DOJ is currently investigating for possible criminal tax violations. On September 30, 1983, the Court issued a

Memorandum Opinion granting the plaintiff much of the relief it requested in its Motion for a Further Search and Indexing and Cross Motion for Partial Summary Judgment. Subsequently, on November 30, 1983, the DOJ filed a Motion for Reconsideration.

A very large portion, if not all, of the documents sought from the DOJ by plaintiff were subpoenaed by a federal grand jury sitting in the Southern District of Florida (Miami), and are now impounded in the custody of the DOJ pursuant to an order of the District Court for the Southern District of Florida. In the September 30, 1983, Memorandum Opinion, this Court held that those documents constitute improperly withheld agency (DOJ) records which, for the most part, are subject to disclosure.

The Court now reconsiders its ruling, grants the DOJ's motion for reconsideration, and finds that the documents subpoenaed by the grand jury and impounded by the district court sitting in Miami are exempt from disclosure in their entirety. Specifically, the Court now holds that those documents are exempt from disclosure because they are not "agency records" under section 552(a)(4)(B) of FOIA, and, in addition, are exempt from disclosure under exemption (b)(3), 5 U.S.C. § 552(b)(3), in conjunction with Fed.R.Crim.P. 6(e).

### Agency Records

With its motion for reconsideration, the DOJ filed the affidavit of Bernard S. Bailor, formerly the trial attorney with the DOJ responsible for supervising the grand jury investigation pertaining to the records sought here. That affidavit provides new information requiring a change in the Court's conclusion; the Court now holds that the impounded documents are nondisclosable grand jury records rather than disclosable "agency records."

The Bailor affidavit describes the circumstances surrounding the issuance of the impoundment order. Shortly after Mr. Bailor was assigned to the grand jury, a series of motions were filed,[1] raising the issue of possible abuse by the DOJ of the grand jury process. The motions alleged

---

1. One of the movants was the Bank of Perrine. The affidavit seems to intimate that other private parties, without identifying whom, also filed similar motions.

that the government was conducting the grand jury for the improper purpose of assisting the Internal Revenue Service in civil rather than criminal tax investigations. Consequently, one party, the Bank of Perrine, moved the court in Florida to vacate at least four disclosure orders previously issued by that court pursuant to Fed. R.Crim.P. 6(e). The court in the Southern District of Florida held a hearing on those motions in January 1976. As a result of the hearing, the DOJ prepared an order designed to meet the objections raised, circulated the order among the counsel for the movants who made changes, and then submitted the proposed order to the court in Florida, which signed it on January 13, 1976. That order, in addition to impounding the documents in the custody of those DOJ attorneys authorized to conduct the grand jury proceedings, also vacated the four disclosure orders, limited the use of the documents to the grand jury investigation, restricted access to DOJ attorneys, and provided that the "government attorneys shall return all or any of the said impounded documents to the jurisdiction of this Court [i.e., the Southern District of Florida] upon notice from this Court."

That order has remained in effect, except for some minor amendments issued by the court in Florida at the request of the DOJ, permitting the government to move the documents to various other rooms within the same building.

■ In light of this new information, the Court must decide whether the impoundment order had the effect of converting the documents from "grand jury records" to "DOJ records." Under FOIA, only "agency" records are disclosable. *Kissinger v. Reporters Committee for Freedom of the Press*, 445 U.S. 136, 150, 100 S.Ct. 960, 968, 63 L.Ed.2d 267 (1980). The DOJ is concededly an agency for purposes of disclosure under FOIA. In contrast, a grand jury is an arm of the judiciary, *see, e.g., Levine v. United States*, 362 U.S. 610, 617, 80 S.Ct. 1038, 1043, 4 L.Ed.2d 989 (1960), which is *not* an agency subject to FOIA's disclosure provisions. *See* 5

U.S.C. § 552(e); *McGehee v. CIA*, 697 F.2d 1095, 1107 (D.C.Cir.1983); *Carson v. U.S. Department of Justice*, 631 F.2d 1008, 1009 (D.C.Cir.1980). The Bailor affidavit and recent case law makes clear that the impoundment order did not transform the documents from grand jury records to DOJ records; even after the order they remain grand jury records and are consequently immune from disclosure.

■ As this Court recognized in its Memorandum Opinion, simple physical possession by an agency—such as the DOJ—of records does not necessarily render them agency records. Slip op. at 5. Rather an agency must either *create* or *obtain* the records before the records become "agency records" for purposes of FOIA. *Forsham v. Harris*, 445 U.S. 169, 182, 100 S.Ct. 977, 985, 63 L.Ed.2d 293 (1980). Since the DOJ did not create the documents sought here, they become DOJ documents only if the DOJ "obtained" them. To determine whether the DOJ "obtained" the documents, the Court must examine two aspects relating to the control of the documents: first, the extent to which the grand jury and the court in Florida manifested any intent to retain control over them. *See Paisley v. CIA*, 712 F.2d 686, 692–93 (D.C. Cir.1983), *vacated in nonrelevant part*, 724 F.2d 201 (D.C.Cir.1984); *Goland v. CIA*, 607 F.2d 339, 346–47 (D.C.Cir.1978), *vacated in nonrelevant part*, 607 F.2d 367 (D.C.Cir.1979), *cert. denied*, 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 759 (1980). Second, the extent to which the DOJ has actually exercised any control. *Paisley*, 712 F.2d at 693–94. *See Wolfe v. Department of Health and Human Services*, 711 F.2d 1077, 1079 (D.C.Cir.1983).

■ Here the court in Florida clearly manifested its intention to retain a large measure of control over the documents. Its intent is revealed by the impoundment order, which served to reinforce control of the documents by the court and the grand jury. The order vacated prior disclosure orders, thus limiting the DOJ's use of the documents; permitted access to only a limited number of people; limited the pur-

poses for which the DOJ could use the documents; and provided for return of the documents to the court upon notice by the court. There was no relinquishment of control by the court or grand jury. *See Federal Deposit Insurance Corporation v. Ernst & Ernst,* 677 F.2d 230, 232 (2d Cir.1982) ("Nothing in the legislative history of the FOIA suggests that Congress intended the FOIA to apply to courts or to confidentiality orders issued in an action in which a federal agency is a party.")

Similarly, focusing on the DOJ, it becomes clear that the DOJ did not feel free to dispose of the documents at will. Nothing makes that clearer than the fact that the DOJ felt compelled to seek permission of the Florida court, by way of motion, for an act as harmless as transporting the documents to another room within the same building. Contrary to this Court's assumption in the Memorandum Opinion of September 30, 1983, the impoundment order did *not* increase DOJ control over the documents; instead it had the effect of decreasing that control.

In sum, the documents remain within the control of the court and the grand jury, and are thus not "agency records" subject to the disclosure commands of FOIA.

**Fed.R.Crim.P. 6(e)**

Though the DOJ did not move for reconsideration with respect to the applicability of exemption (b)(3), 5 U.S.C. § 552(b)(3), in conjunction with Fed.R.Crim.P. 6(e), the Court after reviewing that portion of its Memorandum Opinion of September 30, 1983, now reconsiders that issue as well. In the Memorandum Opinion the Court held that although Rule 6(e) is a statute exempting disclosure within the meaning of exemption (b)(3), nonetheless the exemption is not so broad as to exempt disclosure of corporate documents merely examined by the grand jury if those documents do not describe the nature of the grand jury proceedings. Slip op. at 7. The Court now holds that under *Fund for Constitutional Government v. National Archives & Records Service,* 656 F.2d 856 (D.C.Cir. 1981), Rule 6(e)'s secrecy provisions are broad enough to encompass even such corporate documents.

In *Constitutional Government,* plaintiff sought release under FOIA from the Archives of documents relating to the grand jury investigations that had been conducted by the Watergate Special Prosecution Force. The court there ruled that Rule 6(e), providing for grand jury secrecy, is a statute exempting disclosure within the meaning of exemption (b)(3); under that exemption the government need not disclose "matters that are ... specifically exempt from disclosure by statute." *Id.* at 867–68. Consequently, the court upheld nondisclosure of information

> naming or identifying grand jury witnesses; quoting or summarizing grand jury testimony; evaluating testimony; discussing the scope, focus and direction of the grand jury investigations; and *identifying documents considered by the grand jury* and conclusions reached as a result of the grand jury.

*Id.* at 869 (emphasis added). The court went on to hold that "documents subpoenaed as exhibits" by the grand jury are exempt, and that even "potential documentary exhibits" are exempt, "if disclosure would reveal the direction and strategy of the investigation." *Id.* at 869–70. Of importance is the fact that the Court held that even independently generated documents which were merely considered by the grand jury are exempt from disclosure.

The court then proceeded to distinguish *SEC v. Dresser Industries,* 628 F.2d 1368 (D.C.Cir.1980) (*en banc*), *cert. denied,* 449 U.S. 993, 101 S.Ct. 529, 66 L.Ed.2d 289 (1980). In *Dresser Industries,* the SEC and a grand jury, in parallel investigations, both subpoenaed documents directly from Dresser. Dresser claimed protection from the SEC subpoena under Rule 6(e) because that subpoena covered many or all of the documents subpoenaed by the grand jury. The court in *Dresser Industries* held that Dresser was obligated to comply with the SEC subpoena, and that its corporate documents were not protected by Rule 6(e), despite the grand jury's investigation.

In distinguishing *Dresser Industries*, where the Court of Appeals held that Rule 6(e) did *not* protect Dresser's corporate documents subpoenaed by the grand jury, from *Constitutional Government*, where it held that Rule 6(e) *did* protect documents subpoenaed by the grand jury, the Court of Appeals pointed to the following: Where documents are sought directly from the corporation, as in *Dresser Industries*, then the fact that the grand jury is coincidentally seeking many of the same documents does not bring the documents within the secrecy provisions of Rule 6(e), since revelation does not "elucidate the inner workings of the grand jury." *Constitutional Government*, 656 F.2d at 870.

In fact, if the grand jury proceedings are genuinely secret, other agencies and courts will not know the subject matter of the grand jury investigation and thus will not be able to determine whether their own inquiry will overlap that of the grand jury.

*Id.* at 870 (quoting *Dresser Industries*, 628 F.2d at 1383). In contrast, when the documents are sought directly from the grand jury or its 'successor' (the Archives in *Constitutional Government*, for example) then Rule 6(e) prohibits disclosure. In such an instance, the party obtaining disclosure would be certain that the documents were considered by the grand jury, and would thus be able to ascertain the direction and strategy of that investigation.

■ The facts of the present case are similar to those of *Constitutional Government*, not *Dresser Industries*. Plaintiff here seeks from the DOJ the very documents that the grand jury has subpoenaed. Plaintiff is not seeking the documents from Castle Bank itself, or from the other original sources for the documents. Rather, it is seeking to obtain the information directly from the grand jury through the DOJ. Rule 6(e), in conjunction with exemption (b)(3) of FOIA, does not permit such disclosure.

## CONCLUSION

The Court now reconsiders its Memorandum Opinion of September 1983, and holds that the documents subpoenaed by the grand jury in Florida are not "agency records" under section 552(a)(4)(B) of FOIA, and they are therefore exempt from disclosure. The impoundment order did not transform those records into disclosable DOJ records.

Furthermore, the Court finds that the documents subpoenaed by the grand jury are exempt from disclosure under exemption (b)(3) and Rule 6(e).

It is the Court's understanding that this Memorandum Opinion exempts from disclosure all or nearly all of the documents sought. If there remain any documents which do not fall within the provisions of this Memorandum Opinion, the DOJ shall, by August 6, 1984, file a *Vaughn* index with respect to those documents. The DOJ may at that time raise any relevant issues with respect to those documents, including any issue raised in its motion for reconsideration which this Court has not resolved in this Memorandum Opinion.