**Gretchen GREENSPUN, Plaintiff,**

v.

**COMMISSIONER OF INTERNAL REVENUE, et al., Defendants.**

**Civ. A. No. 84–3426.**

United States District Court, District of Columbia.

Sept. 30, 1985.

Gretchen Greenspun, pro se.

Edward J. Snyder, J. Brian Ferrel, Michael J. Salem, Attys., Tax Div., U.S. Dept. of Justice, Washington, D.C., for defendants; Joseph E. diGenova, U.S. Atty., of counsel.

## MEMORANDUM

OBERDORFER, District Judge.

Plaintiff, proceeding as her own attorney, brought this action under the Freedom of Information Act ("FOIA") and the Privacy Act of 1974 in order to obtain documents and records allegedly possessed by the Internal Revenue Service ("IRS"). In general, plaintiff's request referred to several categories of documents and over eighty systems of records and sought records relating to her and to her recent conviction for failure to file income tax returns. The parties previously filed cross motions for summary judgment, the IRS claiming that it had released all but eleven pages of the requested material in its control.[1] By memorandum dated June 26, 1985, the Court denied without prejudice the parties'

cross motions for summary judgment. An order accompanying that memorandum required defendant to file, on or before July 8, 1985, a renewed motion for summary judgment.[2] Defendant has complied with that order. For the reasons stated below, an accompanying order will grant defendants' renewed motion for summary judgment.

### I.

■ The Court's order of June 26, 1985 required defendant to include with its renewed motion for summary judgment "a detailed justification explaining whether the IRS has segregated disclosable from non-disclosable information appearing in the eleven documents presently at issue in this case."[3] Such segregation is required by the FOIA, which provides that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection." 5 U.S.C. § 552(b). In response to the Court's order, defendants have filed the Declaration of Michael J. Salem.

Mr. Salem, a trial attorney[4] employed by the United States Department of Justice, Tax Division, described in his declaration

---

1. By letter dated March 20, 1985, the IRS transmitted to plaintiff copies of sixty-four pages of documents arguably responsive to her request. Of these sixty-four pages, all except eight pages were complete, unredacted copies. Declaration of Michael J. Salem ¶¶ 4–5. Defendant withheld certain other documents, claiming they were grand jury materials protected from disclosure by Federal Rule of Criminal Procedure 6(e) as applied through 5 U.S.C. § 552(b)(3) (1982).

2. The order stated that the renewed motion should include the following:
   (1) A detailed justification explaining whether the IRS has segregated disclosable from non-disclosable information appearing in the eleven documents presently at issue in this case;
   (2) An affidavit demonstrating that the IRS has conducted a search calculated to uncover all relevant documents;
   (3) An affidavit establishing whether or not the Pennsylvania grand jury has manifested an intent to retain control over the documents in the custody of the IRS, or whether the IRS exercises actual control over these documents;

   (4) A supplemental memorandum addressing the question of whether, pursuant to the Privacy Act, plaintiff may obtain information concerning herself from the grand jury records held in the custody of the IRS.
   The order also required plaintiff to file any response to these affidavits and supplemental memorandum on or before July 18, 1985. Plaintiff has filed no response.

3. The IRS has claimed that it has released in *unredacted* form all but eleven pages of plaintiff's requested material and that three of these eleven pages are duplicates. Eight pages here in dispute (and three pages duplicating some of those eight pages) were released in redacted form. Three other pages were determined to contain no information pertaining to plaintiff and were not released. *See* discussion *infra.*

4. Mr. Salem was the attorney primarily responsible for the preparation and trial or other disposition of this case. Declaration of Michael J. Salem ("Salem Declaration") at ¶ 2.

the steps that were taken to redact the eleven pages at issue. The Salem Declaration clarifies that of the eleven pages in dispute, eight were released to plaintiff. These eight pages were redacted only to the extent that the names and addresses and taxpayer identification numbers of third-party taxpayers were not released.[5]

The Salem Declaration also clarifies that three of the eleven pages were *not* released to plaintiff, even in redacted form. These documents, however, were not erroneously withheld as they were apparently not responsive to plaintiff's request. Pages 9 and 10 are described as a

> two page ... deficiency assessment pertaining to a third party taxpayer. *It contains no information relating to plaintiff,* and therefore, while it was located in a file indexed under her name, bears no connection to any of her tax years. Therefore, while it could be released by removing all identifiers, addresses and identifying numbers, it does not actually concern her request, and if redacted, would convey little if any information.

Salem Declaration at ¶ 5 (emphasis added).

Similarly, the eleventh page, a "computer printout pertaining to a third-party taxpayer," was not redacted and released "since it does not pertain to plaintiff in any way." Id. at ¶ 5. Given the lack of any relation between these pages and plaintiff, as well as the minimal information that would remain after redaction, defendants' decision not to release these documents was not erroneous. *See Neufeld v. Internal Revenue Service,* 646 F.2d 661, 666 (D.C.Cir. 1981).

In short, the Salem Declaration demonstrates that defendants have fulfilled their obligation with respect to the eleven contested pages to insure that "[a]ny reasonably segregable portion of a record shall be released to any person requesting such record after deletion of the portions which are exempt under this subsection." 5

U.S.C. § 552(b). There remains for consideration the question of (1) whether defendants' search was reasonably calculated to uncover other relevant documents and (2) whether certain documents withheld were, as defendants claimed, protected from disclosure as grand jury materials.

## II.

■ The Court's order of June 26, 1985 further required defendants to file an affidavit "demonstrating that the IRS has conducted a search calculated to uncover all relevant documents." *See Weisberg v. Department of Justice,* 745 F.2d 1476, 1485 (D.C.Cir.1984), (quoting *Weisberg v. Department of Justice,* 705 F.2d 1344, 1351 (D.C.Cir.1983)). In response to the Court's order, defendants have filed the "Declaration of Stuart Chamberlain."

Mr. Chamberlain, the Disclosure Specialist for the Internal Revenue Service, Philadelphia District, in his declaration stated that plaintiff "initially requested all records pertaining to her in eighty-one (81) specifically identified systems of records as well as any record pertaining to her in any other system of records within the IRS." *Id.* at ¶ 4.

Upon being informed that an adequate search request must specify the tax years to be searched, plaintiff by letter dated July 30, 1984 requested the District to search files for the tax years 1972, 1973, 1976, and 1978–1983. *Id.* According to Mr. Chamberlain's Declaration, the District initiated its search on July 25, 1984, treating the request "as a FOIA request that sought any document filed under plaintiff's name." *Id.* at ¶ 5. The Disclosure Officer instructed the District's Examination Division, Criminal Investigation Division and Collection Division to search for responsive records, and each division searched its files for tax years 1972–1983. *Id.* at ¶ 5. Mr. Chamberlain stated that "[s]earching the Examination, the Criminal Investigation,

---

5. As discussed in the Court's memorandum of June 26, 1985, such information is properly redacted under the joint application of 26 U.S.C.

§ 6103(b)(2) and 5 U.S.C. §§ 552(b)(3) and 552(b)(7)(C).

and the Collection Divisions enabled the Disclosure Officer to determine whether the Philadelphia District had opened any case on Plaintiff for the tax years searched [and whether] the Appeals Division or District Counsel possibly possessed any records responsive to Plaintiff's request." *Id.* at ¶ 6.

The Examination and Collection Divisions responded respectively on August 7, 1984 and August 10, 1984 that they did not possess any documents responsive to plaintiff's request. *Id.* at ¶¶ 7–8. The Criminal Investigation Division responded on July 30, 1984 that records in its possession filed under plaintiff's name were grand jury records and, therefore, not within the control of the IRS. *Id.* at ¶ 9. After the institution of this litigation, the Criminal Investigation Division, upon request from the Office of Chief Counsel, Disclosure Litigation Division, again searched its files for non-grand jury documents in its possession. That search resulted in identification of more documents which were turned over to the Philadelphia District Disclosure Officer for disclosure to plaintiff.[6]

The Declaration of Stuart Chamberlain satisfactorily demonstrates that the IRS has conducted a " 'search reasonably calculated to uncover all relevant documents.' " *Weisberg, supra,* 745 F.2d at 1485. There remains for consideration the issue of whether documents were properly withheld as grand jury materials.

### III.

■ Defendants' in their initial motion for summary judgment indicated that certain documents responsive to plaintiff's request and in the IRS' possession were not released to plaintiff as "the material is grand jury material which is not within the custody and control of the Internal Revenue Service, and hence is not subject to the Freedom of Information Act." Memorandum in Support of Defendants' Motion for Summary Judgment at 2. The Court's Memorandum and Order of June 26, 1985

required defendants to file with their renewed motion for summary judgment an "affidavit establishing whether or not the Pennsylvania grand jury has manifested an intent to retain control over the documents in the custody of the IRS, or whether the IRS exercises actual control over these documents." In response to the Court's order of June 26, 1985, defendants have filed the "Second Declaration of Frank McLaughlin."

McLaughlin, a Special Agent with the Criminal Investigation Division of the IRS' Philadelphia Office, "began investigating Plaintiff as a result of a Grand Jury investigation into an organization to which Plaintiff belongs." *Id.* at ¶ 3. According to McLaughlin's declaration, "[he] submitted to the Grand Jury all evidence that [he] gathered during the investigation and a report that summarized [his] findings." *Id.* at ¶ 4.

McLaughlin's declaration further indicates that:

After Plaintiff filed this lawsuit, [McLaughlin] turned over to the Philadelphia District Disclosure Office, for disclosure to Plaintiff, all documents within the Criminal Investigation Division that pertained to Plaintiff. The documents included Plaintiff's tax returns for the years 1980 and 1981, Plaintiff's transcript of account and correspondence between Plaintiff and the IRS. Some of the material contained in these documents ... concerns individuals other than Plaintiff. Copies of these documents also had been submitted to the Grand Jury as evidence....

After the Grand Jury was adjourned and Plaintiff's criminal trial was concluded, all Grand Jury documents were returned to the Grand Jury record room for conservation. The Grand Jury has not issued any order pursuant to Rule 6(e) of the Federal Rules of Criminal Procedure and its records are sealed pending final disposition of Plaintiff's

6. *Id.* at ¶ 12; Second Declaration of Frank McLaughlin at ¶ 5. *See supra* note 1.

case.[7] Consequently, the Grand Jury documents remain in the exclusive control of the Grand Jury and its agents. *Id.* at ¶¶ 5–6.

Federal Rule of Criminal Procedure 6(e) prohibits, with certain exceptions, disclosure of "matters occurring before the grand jury." [8] To effectuate the objectives of Rule 6(e),

> the scope of the secrecy is necessarily broad. It encompasses not only the direct revelation of grand jury transcripts but also the disclosure of information which would reveal the identities of witnesses or jurors, the substance of testimony, the strategy or direction of the investigation, the deliberations or questions of the jurors, and the like.

*Fund for Constitutional Govt., supra,* at 869 (quoting *SEC v. Dresser Industries, Inc.,* 628 F.2d 1368, 1382 (D.C.Cir.) (en banc), *cert. denied,* 449 U.S. 993, 101 S.Ct. 529, 66 L.Ed.2d 289 (1980)).

Our Court of Appeals has concluded that, *inter alia,* "information ... identifying documents considered by the grand jury ... falls within the broad reach of ... grand jury secrecy." *Fund for Constitutional Govt., supra,* at 869. Similarly, "[p]otential witnesses and potential documentary exhibits, while less clearly within the rule, if disclosed would reveal the direction and strategy of the investigation." *Id.* at 869–70. As in *Fund for Constitutional Govt., supra,* the instant case does not present a situation where "documentary information coincidentally before the grand jury would be revealed in such a manner that its revelation would not eluci-

date the inner workings of the grand jury." *Id.* at 870.

In such circumstances, "[t]he relevant inquiry is not whether the party seeking the information has an interest other than its role in a grand jury investigation but whether revelation in the particular context would in fact reveal what was before the grand jury." *Id.* at 870. The materials here sought by plaintiff were withheld by defendants on the grounds that the grand jury considered them and, after conclusion of plaintiff's criminal trial, returned them to the grand jury room for conservation under seal pending final disposition of plaintiff's case. *See* Second Declaration of Frank McLaughlin at ¶ 6. In this particular context, disclosure would "in fact reveal what was before the grand jury" and is prohibited by Rule 6(e).[9] Plaintiff's vague allegations that she "has knowledge" that defendants have provided the information here withheld to "various departments of the IRS, in complete violation of the Privacy Act," and that defendants have thereby waived Rule 6(e)'s protections against disclosure,[10] are insufficient to compel the conclusion that defendants must release the grand jury materials to plaintiff.

### IV.

Finally, the Court's Order of June 26, 1985 required defendants to submit with their renewed motion for summary judgment "[a] supplemental memorandum addressing the question of whether, pursuant to the Privacy Act, plaintiff may obtain information concerning herself from grand

---

7. In a telephone conference on September 27, 1985, plaintiff represented that the Court of Appeals for the Third Circuit has sustained the plaintiff's conviction and a petition for a writ of certiorari is on file in the Supreme Court.

8. The Court of Appeals for the District of Columbia has clarified that Rule 6(e) is a statute which in connection with FOIA exemption 3 can protect information from disclosure under the FOIA. *See Fund for Constitutional Government v. National Archives and Records Service,* 656 F.2d 856, 867–68 (D.C.Cir.1981).

9. Plaintiff is, of course, free under Fed.R. Crim.P. 6(e)(3)(D) to petition the United States

District Court in the Eastern District of Pennsylvania for disclosure of the grand jury materials.

10. *See* Brief in Support of Opposition to Defendants' Motion for Summary Judgment, and Plaintiff's Cross Motion for Summary Judgment at ¶ 12. In a telephone conference on September 27, 1985, plaintiff reiterated a representation that relevant grand jury documents had been made available to a "civil division" within the IRS. Government counsel volunteered that if this did happen it would constitute a violation of Rule 6(e).

jury records held in the custody of the IRS." [11] Defendants have filed that supplemental memorandum.

The Privacy Act applies only to systems of records maintained by an executive agency.[12] *See* 5 U.S.C. § 552a(a)(1), (d)(1). Two factors are critical in ascertaining whether the disputed documents in the IRS' physical possession are "agency records" and as such susceptible to plaintiff's Privacy Act request: (1) the extent to which the grand jury manifested an intent to retain control over these documents; and (2) the extent to which the IRS actually exercises control over them.[13]

Here, the court in Pennsylvania has clearly manifested its intention to retain control over the documents which were before the grand jury. After the conclusion of plaintiff's criminal trial, all grand jury documents were returned to the grand jury record room for conservation under seal pending final disposition of plaintiff's case. Second Declaration of Frank McLaughlin at ¶ 6. The Pennsylvania court has issued no order pursuant to Rule 6(e) permitting disclosure of these documents. *Id.* Consequently, "the Grand Jury documents remain in the exclusive control of the Grand Jury and may be examined only by the Grand Jury and its agents," *id.* at ¶ 6, and defendants cite this as evidence of IRS' lack of control.

Somewhat troubling for this conclusion is the Supreme Court's clarification that an agency must either create or obtain documents before those records can be considered "agency records." *Forsham v.*

*Harris,* 445 U.S. 169, 182, 100 S.Ct. 977, 985, 63 L.Ed.2d 293 (1980). As discussed below, certain of the documents in the possession of the IRS and evidently withheld as "grand jury records" were apparently not initially generated by or for the grand jury.

The Second Declaration of Frank McLaughlin indicates that after plaintiff instituted this litigation, McLaughlin turned over to the Philadelphia District Disclosure Officer those documents within the Criminal Division that pertained to plaintiff. "The documents included Plaintiff's tax returns for the years 1980 and 1981, Plaintiff's transcript of account and correspondence between Plaintiff and the IRS." *Id.* at ¶ 5.

Although "[c]opies of these documents also had been submitted to the Grand Jury as evidence," *id.,* McLaughlin's description suggests that at least some of these documents were not generated by or initially *for* the grand jury. This conclusion is supported by McLaughlin's first Declaration in which he indicated that documents not released to plaintiff and concerning matters occurring before the grand jury investigation "were compiled pursuant to grand jury subpoena, prepared in the course of the grand jury investigation, *or otherwise presented to the grand jury."* Declaration of Frank McLaughlin at ¶ 9 (emphasis added). In short, McLaughlin's first and second declarations suggest that at least some of the documents which were transmitted to the grand jury (and later withheld by defendants on that basis) were not in

**11.** Plaintiff in her Cross Motion for Summary Judgment suggested that records exempted from disclosure under the FOIA are not necessarily exempt under the Privacy Act. *See* Plaintiff's Brief in Support of Opposition to Defendants' Motion for Summary Judgment, And Plaintiff's Cross Motion for Summary Judgment at ¶ 5.

**12.** Because a grand jury is an arm of the judicial branch, *see, e.g., Levine v. United States,* 362 U.S. 610, 617, 80 S.Ct. 1038, 1043, 41 L.Ed.2d 989 (1960), its records ordinarily are not agency records within the meaning of the Privacy Act, and thus would not be susceptible to plaintiff's Privacy Act request. Thus, if these records are grand jury records, they are not susceptible to plaintiff's Privacy Act request.

**13.** A "system of records" to which the Privacy Act of 1974 grants individuals a right of access is defined as a group of records *"under the control of any agency."* 5 U.S.C. § 552a(a)(5) (emphasis added). *See also Tigar & Buffone v. United States Department of Justice,* 590 F.Supp. 1012, 1014 (D.D.C.1984); *Paisley v. Central Intelligence Agency,* 712 F.2d 686, 693 (D.C.Cir.1983) ("the cases fit together in standing for the general proposition that the agency to whom the FOIA request is directed must have exclusive control of the disputed documents"), *modified on other grounds,* 724 F.2d 201 (D.C.Cir.1984) (*per curiam* ).

fact generated during the course of the grand jury investigation, but were pre-existing IRS records, copies of which were submitted to the grand jury.

Notwithstanding this fact, the Court concludes that these records are not susceptible to release pursuant to plaintiff's Privacy Act request. The actions of the grand jury, manifesting its intent to retain control over materials it reviewed and the need to preserve grand jury secrecy, effectively remove these documents from the control of the IRS. Consequently, despite the fact that certain documents were not initially generated by or for the grand jury, they are not "agency records" susceptible to plaintiff's Privacy Act request.[14]

For the reasons expressed in this memorandum, an order will grant defendant's renewed Motion for Summary Judgment, without prejudice to further pursuit of plaintiff's claim, either in this Court or in the United States District Court for the Eastern District of Pennsylvania, when the criminal proceedings are completed (*see supra* note 8) or plaintiff is in a position to establish a violation of Rule 6(e) by virtue of a release of grand jury documents to civil divisions in the IRS.

---

**14.** Again, it is recognized that plaintiff is free pursuant to Rule 6(e)(3)(D) to petition the United States District Court in the Eastern District of Pennsylvania for disclosure of the grand jury materials.