852 F.2d 413
 UNITED STATES of America, Plaintiff-Appellee,
v.
David R. BENJAMIN; Philip C. Bourdette; Miriam R.
Bourdette; Cecilia Jason Dederich; Dan L.
Garrett, Jr.; Elizabeth Missakian;
Sybil Schiff; Steven Simon;
Dan Sorkin,
Defendants-
Appellants.
 Nos. 86-1337, 86-1388.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 15, 1988.
Decided July 7, 1988.
 
 William C. Brown, Dept. of Justice, Legal Advice Section, Criminal Div., Washington, D.C., for plaintiff-appellee.
 Robert D. Luskin, Onek, Klein & Farr, Washington, D.C., Thomas J. Nolan, Nolan & Parnes, Palo Alto, Cal., Jay W. Powell, Powell & MacGlashan, Visalia, Cal., Robert N. Harris, Gonzalez & Harris, Mark E. Overland, Overland, Berke, Wesley, Gits, Randolph & Levanas, Los Angeles, Cal., Kenneth W. DeVaney, Salvatore Sciandra, Elia & Sciandra, Fresno, Cal., John L. Williams, Manchester & Williams, San Jose, Cal., Richard B. Mazer, San Francisco, Cal., Tom Henze, Henze, Ronan & Clark, Phoenix, Ariz., for defendants-appellants.
 Appeal from the United States District Court for the Eastern District of California.
 Before KOELSCH, SCHROEDER and FLETCHER, Circuit Judges.
 FLETCHER, Circuit Judge:
 
 
 1
 Benjamin and several co-defendants, members of Synanon, have been indicted for obstruction of justice and conspiracy to obstruct justice, in connection with the alleged destruction of documents pertaining to various civil and criminal proceedings. Defendants appeal the district court's denial of their motions to dismiss the indictments. We affirm.
 
 
 2
 A motions panel of this court has held the district court's order to be an appealable collateral order. United States v. Benjamin, 812 F.2d 548 (9th Cir.1987); United States v. Dederich, 825 F.2d 1317 (9th Cir.1987). These opinions set forth the factual background of the case.
 
 DISCUSSION
 
 3
 This court reviews de novo a district court's determination as to whether a prosecutor's alleged misconduct before a grand jury warrants dismissal of the indictment. United States v. De Rosa, 783 F.2d 1401, 1404 (9th Cir.1986).
 
 
 4
 Although courts have the power to dismiss indictments either on due process grounds, or under their inherent supervisory power over the administration of justice, that power is exercised sparingly. United States v. Busher, 817 F.2d 1409, 1411 (9th Cir.1987). A defendant challenging an indictment has the burden of demonstrating that the prosecutor engaged in flagrant misconduct that deceived the grand jury or significantly impaired its ability to exercise independent judgment. Id.
 
 
 5
 The leading case in this circuit showing circumstances justifying dismissal is United States v. Samango, 607 F.2d 877 (9th Cir.1979). There, the prosecutor's presentation of the transcript testimony of a witness of dubious credibility was combined with the prosecutor's unduly rushing the grand jury decision, improper and prejudicial transcript testimony from the defendant, and testimony from only one live witness, a DEA agent, that was "laden with conclusions concerning the guilt of several defendants, [and] summarized the DEA's investigations, much of which he had not been involved with personally." 607 F.2d at 879, 881. The court concluded that the cumulative effect of these "errors and indiscretions, none of which alone might have been enough to tip the scales, operated to the defendants' prejudice by producing a biased grand jury." Id. at 884. In light of Samango we view the alleged errors by themselves and cumulatively.
 
 I. Witness Bias
 
 6
 The prosecutor presented Dr. Richard Ofshe to the grand jury as a witness. Ofshe, a University of California (Berkeley) sociologist, has "devoted ten years to the study of Synanon." The prosecutor never disclosed to the grand jury that Ofshe, at the time of his testimony, was involved in civil litigation with Synanon in which he was asserting multi-million dollar claims, and which involved some of the same issues of destruction of evidence as were involved in the criminal case. The district court, while acknowledging that "the Grand Jury should have been informed of Dr. Ofshe's involvement as a civil litigant with Synanon and some of the defendants herein," nevertheless held that "Dr. Ofshe's potential bias does not constitute evidence casting serious doubts on the credibility of Dr. Ofshe as a witness."
 
 
 7
 The prosecutor has no duty to present to the grand jury all matters bearing on witness credibility. United States v. Al Mudarris, 695 F.2d 1182, 1185 (9th Cir.1983); Jack v. United States, 409 F.2d 522, 524 (9th Cir.1969). Nevertheless, the prosecutor is not entitled to deprive the grand jury of its opportunity to evaluate witness credibility. See United States v. Samango, 607 F.2d at 884.
 
 
 8
 In Samango, this court affirmed the dismissal of a superseding indictment that had been obtained, in part, by the prosecutor's reliance on transcript testimony of a highly dubious witness. The court of appeals stated that the prosecutor should have presented live testimony from this witness to enable the grand jury to determine the witness's credibility. 607 F.2d at 882. "[T]he prosecutor knew but did not warn the grand jury of [the witness's] dubious credibility, nor apparently did he apprise them that they could subpoena his live testimony." Id. at 881.
 
 
 9
 The defendants here argue that, under Samango, the indictments should be dismissed for the prosecutors' failure to apprise the grand jury of Ofshe's potential bias. Clearly, the prosecutor should have disclosed such obvious sources of witness bias as a witness's involvement in a multi-million dollar lawsuit against defendants. However, Samango does not support the proposition that the breach of the prosecutor's duty in this regard, alone, necessarily requires dismissal of the indictment. In Samango, the failure to disclose witness credibility problems was only one of several errors, "none of which alone might have been enough to tip the scales " justifying the extreme sanction of dismissal. (Emphasis added.) Id. at 884.
 
 II. Rule 6(e) Violation
 
 10
 Defendants also challenge the denial of their motion to dismiss the indictment for alleged improper disclosure of grand jury materials to third parties, in violation of Fed.R.Crim.P. 6(e).A. Background
 
 
 11
 Following Dr. Ofshe's testimony before the grand jury, the government decided to use Ofshe to aid its investigation because "the federal investigative agency involved in the investigation lack[ed] familiarity with Synanon records and the voices appearing on Synanon tape recordings." The government obtained from Judge Robinson[1] an order pursuant to Rules 6(e)(3)(C)(i) and 6(e)(3)(D) to disclose various tape recordings to Ofshe as an "expert" who could assist in the investigation. The government did not inform Judge Robinson of Ofshe's involvement in litigation against Synanon. Specifically, Ofshe had filed a cross-complaint against defendants Dederich, Bourdette, Benjamin, Simon and Dan Garrett for intentional infliction of emotional distress, malicious prosecution and harassment; he had recently amended the cross-complaint to charge defendants with destruction of evidence, which is also the basis for the criminal charges. Defendants argue that the disclosure was improper because it was not authorized under Rule 6(e); and that, even if it was authorized, it was obtained by means of misrepresentation and concealment by the government, and therefore improper. Defendants argue that dismissal of the indictment is the proper remedy.
 
 
 12
 Judge Robinson, in approving the disclosure order, concluded (and the government argues here) that the materials were not "matters occurring before the grand jury" within the meaning of Rule 6(e), because "they did not reveal the strategy and direction of the grand jury investigation."
 
 
 13
 If Rule 6(e) applies, the district court has discretion to order disclosure of materials, and this court reviews the order for an abuse of discretion. Douglas Oil Co. v. Petrol Stops Northwest, 441 U.S. 211, 228, 99 S.Ct. 1667, 1677, 60 L.Ed.2d 156 (1979). However, the district court's determination of whether matters are ones "occurring before the grand jury," such that Rule 6(e) applies, is a mixed question of law and fact which we review de novo.
 
 B. Whether Rule 6(e) applies
 
 14
 The cases seem to agree that the touchstone of Rule 6(e)'s applicability is whether the disclosed materials would "elucidate the inner workings of the grand jury." Senate of Puerto Rico v. U.S. Dept. of Justice, 823 F.2d 574, 583 (D.C.Cir.1987) (quoting Fund for Constitutional Gov't. v. National Archives, 656 F.2d 856, 870 (D.C.Cir.1981)). However, doubt exists as to whether subpoenaed documents created for purposes unrelated to the grand jury constitute "matters occurring before the grand jury." Compare Senate of Puerto Rico, 823 F.2d at 584 (mere fact that material was presented to grand jury does not automatically establish that it would reveal grand jury's inner workings); SEC v. Dresser, 628 F.2d 1368, 1382-83 (D.C.Cir.1980) (same); United States v. Lartey, 716 F.2d 955, 964 (2d Cir.1983) (documents not cloaked in secrecy merely because they are presented to grand jury), with National Archives, 656 F.2d at 869 (scope of secrecy encompasses documents which would reveal "the identities of witnesses or jurors, the substance of testimony, the strategy or direction of the investigation, the deliberations or questions of the jurors, and the like"); Tager & Buffone v. U.S. Dept. of Justice, 590 F.Supp. 1012, 1015 (D.D.C.1984) (same); Greenspun v. C.I.R., 622 F.Supp. 551, 555 (D.D.C.1985) (information revealing what documents were placed before the grand jury covered by secrecy provisions).
 
 
 15
 To resolve this issue, we find it helpful to examine the interests underlying grand jury secrecy and Rule 6(e). In Douglas Oil, 441 U.S. at 219, 99 S.Ct. at 1673, the court noted the need: (1) to protect witnesses' willingness to come forward and testify fully and frankly; (2) to reduce the risk of flight by grand jury targets; (3) to assure that persons accused are not damaged in their reputations. Also it is important (4) to protect the grand jury from outside interference. United States v. Lartey, 716 F.2d 955, 964 (2d Cir.1983). If any of the policies underlying grand jury secrecy may be adversely affected by a disclosure, Rule 6(e) should apply. See id. at 963-64.
 
 
 16
 In the instant case, Ofshe's involvement in the lawsuit against Synanon implicates the third and fourth rationales of grand jury secrecy: his interests in this lawsuit would be served by damaging the defendants' reputations, and he, accordingly, has an interest in influencing the grand jury. Thus the tapes in this case should be considered "matters occurring before the grand jury."
 
 C. Rule 6(e)(3)(C)(i)
 
 17
 Defendants, relying on United States v. Tager, 638 F.2d 167 (10th Cir.1980), argue that the district court was without authority to order the disclosure of grand jury materials to Ofshe and that, consequently, the indictment must be dismissed.[2] In Tager, the government obtained the defendant's indictment for mail and wire fraud based largely on the investigative work initiated by an investigator employed by a consortium of insurance companies. After developing sufficient evidence to turn over to the government, the private investigator continued to assist the government's investigation, to which end he was given access to certain grand jury materials made available under Rule 6(e)(3)(C)(i). This rule allows disclosure of grand jury materials, as an exception to the general rule of secrecy, "when so directed by a court preliminarily to or in connection with a judicial proceeding."
 
 
 18
 The Tager court held that the district court was not authorized by this provision to order the disclosure. First, citing the legislative history of Rule 6(e), the court reasoned that it is subsection (e)(3)(A)(ii), and not (e)(3)(C)(i), that governs disclosures to assisting investigators. Subsection (A)(ii), which allows disclosure to "such government personnel (including personnel of a state or subdivision of a state) as are deemed necessary by an attorney for the government to assist ... [in the enforcement of] federal criminal law," apparently reflected the conscious choice of its drafters to limit such investigatory disclosures to "government personnel" and exclude private investigators. 638 F.2d at 170.
 
 
 19
 Second, the Tager court reasoned that subsection (C)(i) was "not designed nor has it been used in the past as a source of authority for a court to order disclosure to assist with the present grand jury proceedings." Id. The court interpreted the phrase in subsection (e)(3)(C)(i), "preliminarily to or in connection with a judicial proceeding" as excluding the grand jury proceeding at issue: "To apply this provision to the very grand jury from which disclosure is sought seems somewhat illogical." 638 F.2d at 170 (quoting In re Miami Federal Grand Jury No. 79-8, 478 F.Supp. 490, 493 (S.D.Fla.1979)).
 
 
 20
 However, Tager is not the only word on this subject. In United States v. Mayes, 670 F.2d 126 (9th Cir.1982), this court held that disclosure of certain grand jury materials to an expert witness before the grand jury was permissible under Rule 6(e)(3)(C)(i). The court interpreted the phrase "preliminarily ... to a judicial proceeding" to include the ongoing grand jury proceeding at issue. 670 F.2d at 129; accord United States v. Stanford, 589 F.2d 285, 292 (7th Cir.1978). The court distinguished Tager, "without expressing a view as to [Tager 's] correctness," by noting that the expert witness in Mayes was not asked to assist an ongoing investigation, but to express his expert medical opinion on evidence previously presented to the grand jury. 670 F.2d at 129 n. 2. The government could have instead "familiarized [the expert witness] with the facts surrounding the child's death by posing a complex hypothetical ... [, but] this approach would have been unduly cumbersome." Id. at 129. In any event, the law in this circuit, contrary to Tager, is that subsection (e)(3)(C)(i) applies to the current grand jury proceeding.
 
 
 21
 Tager has been eroded by a subsequent case from its own circuit. In United States v. Anderson, 778 F.2d 602, 605 (10th Cir.1985), an "expert" grand jury witness was shown grand jury materials, and he commented on them at the grand jury's request. The Tenth Circuit reversed a district court ruling that that procedure violated Rule 6(e). The court distinguished Tager on the ground that Tager involved "a nontestifying investigator [who] was not in any sense in the employ of the government, and the prosecution, not the grand jury, made the request for disclosure." 778 F.2d at 605 n. 1.
 
 
 22
 Anderson narrows and discredits Tager to the point that it is doubtful authority even in its own circuit. It is difficult to see what difference it makes, for Rule 6(e) purposes, whether the "investigator" or "expert" testifies or not: the breach of secrecy and ability to influence grand jury evidence are very similar.[3] The fact that the grand jury asked for the disclosure in Anderson is particularly problematic, since that fact arguably takes the disclosure out of (e)(3)(A)(ii), which provides only for disclosure requests by the prosecutor. If (e)(3)(A)(ii) is inapplicable, the only possible applicable subsection would be (e)(3)(C)(i). Significantly, Anderson relies on no particular subsection of Rule 6(e), so as to avoid either rewriting section (e)(3)(A)(ii) or expressly overruling Tager.
 
 
 23
 If Tager has any vitality at all after Mayes and Anderson, its effect in this case would be to bar disclosures to private investigators or non-expert witnesses. Ofshe apparently did not testify regarding the tapes, and even if he had, he was not an "expert" but rather a percipient witness who could identify the taped voices. Thus, he is more like a private investigator than an expert. We hesitate to adopt Tager 's reasoning that subsection (e)(3)(A)(ii) precludes resort to private investigative help. Instead, we read subsection (e)(3)(C)(i) as giving discretion to the district court to order the disclosure of grand jury materials to private parties aiding the government's investigation. However, such disclosures under Rule 6(e)(3)(C)(i) can only be ordered by the court on "a strong showing of particularized need" that must be weighed against the interests in grand jury secrecy. United States v. Sells Engineering Inc., 463 U.S. 418, 443, 103 S.Ct. 3133, 3148, 77 L.Ed.2d 743 (1983). In this case, because Ofshe was uniquely able to identify the taped voices of Synanon members, the district court cannot be said to have abused its discretion in finding the requisite "particularized need" to order disclosure under subsection (e)(3)(C)(i).
 
 D. Government Misconduct
 
 24
 Defendants argue that, even if the Rule 6(e) disclosure order was facially proper, the order was "vitiated" by the government's concealment of Ofshe's private interest in the outcome of the investigation.
 
 
 25
 As noted above, Ofshe's involvement in civil litigation against defendants arguably implicates the policies underlying grand jury secrecy. Therefore, that information could have been relevant to the district court's exercise of discretion, which calls upon the court to weigh the government's need to disclose against the risks of violating grand jury secrecy. See Sells Engineering, 463 U.S. at 443, 103 S.Ct. at 3148. Had the court been apprised about Ofshe, it might also have tailored its disclosure order to restrict Ofshe's misuse of the grand jury materials. However, given the order's general prohibition against Ofshe's disclosure of the materials to others and the strong showing of particularized need for Ofshe's assistance, we do not consider dismissal of the indictment to be the appropriate remedy in this case. It would be more appropriate for the district court to issue an order foreclosing Ofshe's use of the grand jury materials.
 
 III. Fifth Amendment Harassment
 
 26
 Defendants assert that the prosecutor engaged in a systematic pattern of calling and questioning witnesses who had stated their intention to assert the fifth amendment, solely for the purpose of prejudicing the grand jury.
 
 
 27
 The grand jury transcripts show the following. Philip C. Bourdette claimed the privilege not to answer 17 of 34 questions, pertaining to his address, various Synanon connections, and destruction of documents. The government asked him, document by document, whether he would produce subpoenaed documents, to which Bourdette responded by asserting the privilege.[4] Cecilia Jason Dederich claimed the privilege not to answer 115 of 168 questions, pertaining to her address, Synanon affiliations, her intentions to furnish documents in compliance with subpoena (accounting for twenty-two pages of colloquy), her knowledge of Synanon activities and destruction of evidence. Sybil Schiff asserted the privilege as to 39 of 53 questions, dealing with Synanon ties and destruction of evidence. Steven Simon asserted the privilege to 31 of 66 questions, dealing with his address, his Synanon connections and destruction of documents. He did answer certain biographical questions, including questions about his two marriages and his divorce.[5] Miriam Bourdette, Elizabeth Missakian and David Benjamin "were called briefly, claimed their Fifth Amendment privileges, and were excused."
 
 
 28
 Defendants cite no case, nor have we found one, in which an indictment was dismissed because the U.S. attorney had improperly compelled the witness to invoke, even repeatedly, the fifth amendment privilege.[6] In general, the fifth amendment does not prohibit calling potential defendants or "targets" before the grand jury, notwithstanding the likelihood that the witness will assert the privilege against self incrimination. See United States v. Friedman, 445 F.2d 1076, 1088 (9th Cir.1971); United States v. Fortunato, 402 F.2d 79, 82 (2d Cir.1968). Nor is it prosecutorial misconduct to "test the validity of the defendants' reliance on their constitutional right to remain silent." United States v. Wolfson, 405 F.2d 779, 784-85 (2d Cir.1968).
 
 
 29
 We find that the prosecutor's questioning of the witnesses, so as to cause them repeatedly to assert the fifth amendment privilege, alone, does not rise to the level of flagrant prosecutorial misconduct requiring dismissal of the indictments. See United States v. Duff, 529 F.Supp. 148, 155 (N.D.Ill.1981) (dismissal not warranted where prosecutor caused defendant to invoke privilege fifty-five times and questioned good faith of defendant's reliance on fifth amendment before grand jury). It is true that the prosecutor's conduct here was far from exemplary. We do not suggest that our tolerance of excessive prosecutorial zeal in grand jury proceedings is unlimited. We go only so far as to say that the record does not show that the prosecutor harangued the witnesses or improperly commented on their assertions of privilege,[7] nor do defendants contend that the questions placed unfounded allegations before the grand jury. Cf. United States v. Serubo, 604 F.2d 807, 814-16 (3rd Cir.1979).
 
 
 30
 The district court found that the alleged "privilege harassment" was not improper, because all of the witnesses but one were asked either to provide handwriting samples, to produce documents, or to answer non-incriminating questions. This may support the legitimacy of calling the witnesses, but it is not dispositive. The district court appears to have relied upon United States v. Horowitz, 452 F.Supp. 415 (S.D.N.Y.1978). In Horowitz, the court held that questioning defendant "concerning his knowledge of the events under investigation while aware that [defendant] intended to assert his privilege was not improper ... even were the government previously informed that the privilege would be claimed, unless [defendant] were called solely for the purpose of displaying his claim of privilege to the grand jury." Id. at 418 (emphasis added). In making this "sole purpose" qualification, the Horowitz court cited Fortunato, 402 F.2d at 82; however, Fortunato does not support that proposition, and we decline to adopt the rule created in Horowitz.[8]
 
 
 31
 The rationale for this "sole purpose" rule is presumably to prohibit prosecutors from questioning witnesses in bad faith to elicit prejudicial assertions of the privilege. However, it would be easy enough for prosecutors to avoid a finding that eliciting such responses was the sole purpose of calling a witness: the prosecutor could call for some token production of physical evidence, or ask some token questions that the witness could answer. Thus, if bad faith is the touchstone of impropriety, cf. United States v. Basurto, 497 F.2d 781, 786 (9th Cir.1974) (prosecutor has duty of good faith to Court, grand jury and defendant), the prosecutor's ability to show an additional purpose for calling the witness should not necessarily be dispositive, if the prosecutor's main purpose is to harass the witness. Conversely, if the prosecutor has a legitimate purpose in calling and questioning witnesses knowing they will assert the privilege see e.g., Wolfson, 405 F.2d at 784-85 (legitimate to "test" witness's reliance on privilege), then it is difficult to see why the prosecutor should be required to show other reasons for calling the witness.
 
 
 32
 Defendants assertion that these instances together revealed a "systematic pattern" of misconduct adds little to their argument.[9] If it is not improper to cause a lone defendant to assert the privilege, knowing in advance that he will do so, we do not see why the same treatment would be improper directed at multiple defendants (in a conspiracy or other case). Defendants offer no legal theory or authority to suggest otherwise.
 
 
 33
 IV. Interference with Grand Jury Impartiality
 
 
 34
 The prosecutor has an obligation not to infringe upon the independent judgment of the grand jury. See, e.g., United States v. McClintock, 748 F.2d 1278, 1285 (9th Cir.1984). The defendants argue that the prosecutor violated this obligation by asking the defendants prejudicial and irrelevant questions, and making belittling or derogatory remarks and gestures.
 
 
 35
 The first alleged incident involved David Benjamin. During a break in the proceedings, Benjamin, who was acting as his own attorney, approached the prosecutor to ask him a question; the prosecutor "yelled" that Benjamin was a target so that the prosecutor could not speak to him, causing several listening grand jurors to laugh. This incident, though reflecting adversely on the prosecutor's professional demeanor does not rise to the level of misconduct described in United States v. Kilpatrick, 575 F.Supp. 325, 333 (D.Colo.1983) (defendant's expert witness, a University of Washington tax law professor, was "browbeaten" by government attorney, who told witness that his testimony was a disgrace and intimated that Tax Division would complain to witness's law school). Moreover, the prosecutor's conduct did not convey an impression of Benjamin's guilt, beyond the fact already known to the grand jury, that Benjamin was a target. See United States v. Cederquist, 641 F.2d 1347, 1359 (9th Cir.1981) (dismissal of indictment not justified where prosecutor's conduct conveys his belief that indictment is warranted).
 
 
 36
 Defendants also assert that in questioning Dennis Speert, then president of Synanon, the prosecutor repeatedly expressed disbelief when Speert denied knowing the answers to certain questions. Defendants also claim the prosecutor asked Speert to investigate certain matters and report back, but would not let Speert take notes on what those matters were. The prosecutor also allegedly repeatedly insisted to Yvette Van Dalsem, a clerk in Synanon's law office, that she answer questions regarding document production "yes" or "no"; when she asserted privilege on one occasion, he made exasperated gestures; the grand jurors laughed on one occasion when she left the room to consult with her attorney; and after her testimony, she was ordered to return five days later, disrupting her plan to return home to California from Washington, D.C.
 
 
 37
 The district court, after in camera review of the transcripts, rejected the defendants contentions concerning Speert and Van Dalsem, as based on inaccurate or exaggerated allegations. We do not have these portions of the transcript before us. But even if we take the allegations as true, they do not rise to the level of serious misconduct. The exasperated gesture in response to Van Dalsem's assertion of privilege does not amount to "flagrant or abusive conduct" justifying dismissal of the indictment. United States v. Pabian, 704 F.2d 1533, 1539-40 (11th Cir.1983) (three or four spontaneous gestures of exasperation, not in conjunction with harassing or improper questions, not flagrant or abusive).
 
 
 38
 If their description is accurate, the expressions of disbelief in response to Speert's denials of knowledge attributed to the prosecutor certainly were unseemly. However, this conduct is not the same as impugning a witness for asserting the privilege, does not constitute a direct attack on Speert's credibility and does not make false insinuations or create inferences that would not have been apparent to the grand jury, which knew Speert was president of Synanon.
 
 
 39
 The other allegations, dealing with actions by the prosecutor that added to the unpleasantness of the experience for these witnesses, show a certain amount of disrespect that could have a subtle and indirect influence on the grand jury's impartiality. However, indictments have been dismissed only in cases involving direct and unfounded or irrelevant insinuations by the prosecutor of witness wrongdoing or dishonesty. See United States v. Hogan, 712 F.2d 757, 761 (2d Cir.1983) (prosecutor's inflammatory rhetoric to grand jury that defendant was a "hoodlum" plus unfounded allegations of other criminal activity); United States v. Serubo, 604 F.2d 807, 818 (3d Cir.1979) (gratuitous unsupported references to defendant's violent tendencies and purported Mafia associations); United States v. Roberts, 481 F.Supp. 1385, 1389 & n. 9 (C.D.Cal.1980) (questions insinuating that witness was getting paid by defendant to testify, coupled with prosecutor's broken promise to supervising judge to provide exculpatory evidence to grand jury).
 
 
 40
 Finally defendants charge that a colloquy between the prosecutor and Ronald Cook, in which the prosecutor's question insinuated that Cook was present at "the beating of individuals" at a Synanon facility, was improper. Defendants rely on United States v. Serubo, 604 F.2d 807, 815-16 (3d Cir.1979), in which the prosecutor's conduct, found "improper, reprehensible and unacceptable," by the court, included the following colloquy between the prosecutor and a witness (not the defendant in that case):
 
 
 41
 Q. Have you ever heard the name Frank Sindone?
 
 
 42
 A. No.
 
 
 43
 Q. Do you know Frank Sindone is probably the number three man of the Philadelphia Cosa Nostra?
 
 
 44
 A. No.
 
 
 45
 Q. Do you know Frank Sindone was tried for loan sharking in 1971? [He was acquitted.]
 
 
 46
 A. No.
 
 
 47
 Q. Do you know that during the course of his loan-sharking case there were tapes played in open Court that he stated that in referring to someone that owed him money, a woman, he was going to take a hatchet and slice her head in two; that is on tape. Do you know that was said in open Court?
 
 
 48
 Id. at 815. We find Serubo distinguishable from this case. In Serubo the government conceded that it had failed to lay any evidentiary foundation for its attempt to link the defendant to organized crime; further, the prosecutor failed to reveal to the grand jury that the defendant had been acquitted of loansharking. In this case, there is no allegation that the insinuation is untrue or misleading. More importantly, the insinuations against Cook could not have prejudiced Cook in the same way the insinuations in Serubo prejudiced that defendant, because Cook was testifying under a grant of immunity. Finally, the court in Serubo remanded, threatening dismissal of the indictment as a sanction to deter "entrenched and flagrant," as opposed to isolated, misconduct of that sort by prosecutors. Id. at 817. We do not find that the prosecutor's conduct here, if it is misconduct, justifies dismissal.
 
 V. Abuse of Subpoena Authority
 
 49
 Defendants argue that the prosecutor issued certain grand jury subpoenas for the improper purpose of preventing disclosure of those documents to the defendants. According to defendants, the prosecutor's subpoena of documents in June and September 1983, prior to the empaneling in October of the particular grand jury which investigated the charges leading to this indictment, raises an inference of such an impropriety. This vague allegation appears to lack legal and factual support. There is nothing in the record to suggest that the prosecutor abused the grand jury's subpoena authority. See United States v. Kleen Laundry & Cleaners, 381 F.Supp. 519, 523 (E.D.N.Y.1974).
 
 
 50
 VI. Evidentiary Hearing and Disclosure of Transcripts
 
 
 51
 An evidentiary hearing is required on a motion to dismiss an indictment if defendants raise a material issue of fact which, if resolved in accordance with defendants' contentions, would entitle them to relief. United States v. Irwin, 612 F.2d 1182, 1187 (9th Cir.1980). There were factual disputes as to whether certain witnesses had communicated to the prosecutor, prior to their appearing before the grand jury, their intention to assert the privilege. There were also disputes as to whether the prosecutor had harassed certain witnesses by gestures that would not appear in the record. However, no evidentiary hearing was or is necessary, because dismissal would not be warranted even if defendants' versions of the facts were true.
 
 
 52
 We also reject the defendants' claim that the district court abused its discretion by refusing to disclose grand jury transcripts to the defendants under Rule 6(e)(3)(C)(ii). A defendant has no right to pre-trial discovery of grand jury transcripts absent a particularized need. United States v. Ferreboeuf, 32 F.2d 832, 835 (9th Cir.1980); Lancey v. United States, 356 F.2d 407, 412-13 (9th Cir.1966). No such need exists, in light of our resolution of the above issues.
 
 CONCLUSION
 
 53
 We have found real merit only to one of the several contentions raised by defendants. The prosecutor's failure to disclose Ofshe's source of potential bias was a breach of duty to the grand jury and the district court. Under slightly different circumstances, this lapse could have compromised the government's Rule 6(e) disclosure motion as well. However, it does not by itself justify dismissal of the indictment. See Samango, 607 F.2d at 884. The other alleged conduct either does not rise to the level of misconduct, or else is not sufficiently serious, even taken together with the Ofshe situation, to merit dismissal. See id.
 
 
 54
 AFFIRMED.
 
 
 
 [1]
 District of Columbia District Court, presiding before the case was moved to the Northern District of California
 
 
 [2]
 Defendants state, that the Tager court "ordered dismissal of the indictment." In actuality, Tager reversed the defendant's conviction and "remanded for further proceedings consistent with" the opinion, but contained no discussion of the appropriate remedy. 638 F.2d at 168, 171. On remand, the district court dismissed the indictment
 
 
 [3]
 It also seems irrelevant whether or not Ofshe, like the Anderson witness, was paid by the government
 
 
 [4]
 A substantial percentage of questions which witnesses refused to answer dealt with the witnesses' intentions to produce corporate documents. While the document-by-document questioning might resemble "harassment," those questions may have been justified by the prosecutor's need to make a record to challenge the assertions of privilege. It is well established that the privilege against self incrimination is personal and does not extend to corporate documents. Bellis v. United States, 417 U.S. 85, 88, 94 S.Ct. 2179, 40 L.Ed.2d 678 (1974)
 
 
 [5]
 Apparently, witnesses were routinely questioned about marital status because many of them had asserted marital privilege at prior proceedings
 
 
 [6]
 United States v. Coppola, 479 F.2d 1153 (10th Cir.1973), cited by defendants in their reply brief, is inapposite. There, the court reversed a conviction where a witness was called at trial even though the prosecutor knew he would assert the privilege. The prosecutor asked twenty questions which the witness refused to answer and which implied the witness's knowledge of facts which he really did not know. Defendants here do not make this contention about the grand jury questions. Moreover, the concerns animating appellate scrutiny of evidentiary rulings at trial, where the issues are honed to a determination of guilt or innocence, differ from those governing judicial review of prosecutorial conduct before the grand jury
 
 
 [7]
 Courts have recommended, but not required, that the prosecutor instruct the grand jury to draw no adverse inferences from assertions of privilege; all that is required is a Miranda -type warning. See, e.g., Friedman, 445 F.2d at 1088; Duff, 529 F.Supp at 155. Here, the prosecutor Mirandized the witnesses, but gave no cautionary instructions to the grand jury. Where, as here, the prosecutor repeatedly elicited assertions of privilege, some cautionary instructions would have been appropriate
 
 
 [8]
 The same judge, a year earlier in United States v. Goldman, 439 F.Supp. 337, 348-49 (S.D.N.Y.1977), noted that a prosecutor's question to a grand jury target was improper where the question, on its face, assumed that the witness would assert the privilege. However, the court found a lack of prejudice because the defendant was indicted by a different grand jury. It is difficult to reconcile the "impropriety" of the question in Goldman with the "propriety" of the questions in Horowitz
 
 
 [9]
 Defendants' contentions regarding witnesses Ronald Cook and Chris Reynolds boil down to the same general claim that it is improper knowingly to make grand jury witnesses assert the privilege