**E.J. SIMMONS, Plaintiff,**

v.

**Peggy B. DEANS, Clerk, United States Bankruptcy Court, Defendant.**

**Adv. No. M–89–0286–AP.**

United States Bankruptcy Court,
E.D. North Carolina.

March 20, 1990.

E.J. Simmons, Wrightsville Beach, N.C., pro se.

R.A. Renfer, Jr., Asst. U.S. Atty., Civ. Section, Raleigh, N.C., for Peggy B. Deans.

Stephen L. Beaman, Wilson, N.C.

## MEMORANDUM OPINION

THOMAS M. MOORE, Chief Judge.

This matter is before the court on the defendant's motion to dismiss and the plaintiff's motion for summary judgment. The facts are not disputed and they are set out in the Complaint. In addition, the court takes judicial notice of the method of operations within the clerk's office.

The defendant moved to dismiss the Complaint because it was not the proper subject matter for an adversary proceeding and because the court did not have jurisdiction. The facts are as hereinafter set out.

## FACTS

The clerk is charged with the responsibility of maintaining the records of the court

and conducting the operations of the court. In conducting the court operations, the clerk utilizes certain electronic equipment, including a network of sixteen personal computers which operate off a COMPAQ 386/20. The 386 has an 110 megabyte capacity. In current operations, the clerk uses approximately 35 to 40 megabytes of this capacity for data. At the end of each workday, the systems administrator, Mrs. Wayburn Mills, performs a daily backup of all data in the 386 onto diskettes. This procedure is performed as a precautionary measure in case of mechanical failure and to avoid any circumstance which may cause corruption of the data. The backup provides the court with fourteen diskettes (the number of diskettes will increase as the information on the data base increases) which stores all of the data on the 386. The data backup process takes about thirty minutes. Additional data is added daily, and as a result, the amount of time required will increase daily. The process is performed after the regular workday ends because the process cannot be performed without shutting down the computer network. The network system for the court includes computers in the judge's office, the clerk's office and the bankruptcy administrator's office.

In the day-to-day operations in the clerk's office, petitions in bankruptcy are filed, the filing fees are paid, the case file is set up and the case processing begins. The local rules of court require the case to be accompanied by a "case cover sheet" which reflects certain information such as the estimated value of the assets and liabilities. The "case cover sheet" is not a permanent record. In addition, each bankruptcy case includes a Summary of Assets and Liabilities as one of the required schedules. This Summary of Assets and Liabilities is a permanent part of the case file. During the processing of each case, the information relating to the assets and liabilities of each case is entered in the computer by a deputy clerk in operations. The information regarding assets and liabilities and other data are electronically transmitted to the Statistical Analysis and Reports Division of the Administrative Office of the United States Courts in Washington, D.C., for use in conducting statistical studies and analysis regarding bankruptcy case filings. The information regarding assets and liabilities is not used by the clerk's office and there are no reports generated by the clerk's office which reflect the names or numbers of the cases filed in which the assets or liabilities equal or exceed certain sums.

When a person comes to the clerk's office and requests certain information, the person making the request must provide the clerk's office the name of the case or the number of the case. There are only two index systems into the clerk's files; i.e. case name or case number. Without the case name or number, the clerk's office cannot provide information to the person requesting the same. If the person requesting information provides a case name or number, a deputy clerk can retrieve the case file from the clerk's file room and permit the file to be reviewed by the requestor. If the person requesting information asks the deputy clerk to search the file for a particular document, there is a $15.00 charge made for a "record search." If copies of the document are requested, copies are provided for fifty cents a page. The case files are public records and they are available for examination by the public upon request for a particular case file by name or number.

All of the information in the case file is not put on the computer. The information put on the computer is basic data, such as docket entries, name, address, type of case, etc. Entire documents, such as motions or orders, are not entered into the computer. The clerk does not respond to inquiries requesting bulk data, such as a list of Chapter 7 cases filed or all business cases filed or all cases filed in which assets exceed five million dollars. Although the records are public, the clerk does not compile reports for the public. The current services performed by the clerk for the public are (1) production of a complete case file for examination upon request by name or number, (2) search of a case file for a particular document upon request by name

or number of case file and title or document about which information is desired, and (3) copies of documents upon request. The charges for these services are set by the Judicial Conference.

The clerk's office used to maintain a daily log of all cases filed. The log was not a permanent record, but it was maintained for at least one year. When the clerk's office converted to computers, it ceased maintaining a daily log and simply made a printout of the cases filed on a weekly basis. On Monday of each week, there is a printout of all the cases, by name and number, that were filed the previous week. The printout also reflects the original chapter under which the case was filed, the chapter under which the case is now pending, the day the case was filed and the name of the trustee. The weekly printout is maintained for at least one year. Copies of the printout are available for fifty cents a page. This report is not prepared and maintained to accommodate any person or groups of persons. It is maintained for the convenience of the clerk and the public in general.

The plaintiff requested the clerk to provide him with a list of all cases with assets in excess of a certain dollar amount. The clerk refused to comply with the request. Mr. Simmons then requested the clerk to provide him with a copy of all of the data on the hard disk drive in the COMPAQ 386 in the form of diskettes. This data is referred to by the plaintiff as "the primary case file." With the diskettes of this information, Mr. Simmons could run his own report on the cases with assets over a certain dollar amount. The clerk declined to make diskettes of the main database available to Mr. Simmons.

This action was instituted by Mr. Simmons against the clerk to compel her to provide him with diskettes of the data from the main database in the COMPAQ 386. Mr. Simmons has offered to pay the United States a reasonable fee for copying the database or for preparing a report on the cases with assets over five million dollars. The Judicial Conference has not established a charge for such services and this court has no established policy on providing like services to the public.

## ISSUE

Whether the clerk is required to provide Mr. E.J. Simmons, upon request, with diskettes containing all the data on the database in the COMPAQ 386 which is used by the clerk in the operations of her office. If so, what charge should be made by the clerk for such services and the diskettes?

## DISCUSSION

The defendant's motion to dismiss for lack of jurisdiction is denied. The court has inherent jurisdiction over the clerk of its own court. A statutory grant of jurisdiction is not necessary. The action has been improperly brought as an adversary proceeding. Bankruptcy Rule 7001. However, this is not fatal. The court will ignore the form of the proceeding and treat the Complaint as a motion to compel the clerk to provide information.

The Judicial Conference is vested with authority to prescribe fees to be charged to the public for miscellaneous services performed by the clerk of court. 28 U.S.C. §§ 1913, 1914(b), 1926 and 1930(b). At the present time, the Judicial Conference has set fees for record searches, copying, certification of documents and tapes. The Judicial Conference has not yet provided the courts with any guidance on the propriety of providing the general public with bulk data or on the cost of providing such information.

The Freedom of Information Act, is not applicable to the United States Courts. 5 U.S.C. § 552(e); *Tigard Buffone v. United States Dept. of Justice*, 590 F.Supp. 1012, 1014 (D.C.D.C.1984); *McGehee v. C.I.A.*, 697 F.2d 1095, 1107 (D.C.Cir.1983); *Carson v. U.S. Department of Justice*, 631 F.2d 1008, 1009 (D.C.Cir.1980). Although it might be argued that the courts should follow the "public spirit" of such statutes, the court's primary concern is with the efficient operation of the judicial system and the administration of justice. This paramount interest should not be diminished in an effort to accommodate "commercial

users" of court data as opposed to parties to a proceeding or parties with a pecuniary interest in a proceeding.

■ The clerk's office is not fully automated. It does not have all of the electronic equipment it needs to operate with maximum efficiency. Although the Administrative Office of the United States Courts is working diligently in conjunction with the Judicial Conference of the United States to provide all of the clerk's offices with state of the art electronic equipment, the budget restraints on equipment, personnel and training have prevented the courts from becoming fully automated. In the process of converting from conventional equipment to computers, the Judicial Conference has recognized that it must also deal with policy questions regarding furnishing information to the general public and the cost of this service. These questions are now being considered by the Judicial Conference; however, these questions have not yet been resolved as a matter of policy or provided for by statute.

In considering the request of Mr. Simmons, the court must decide, in the absence of guidance from the Judicial Conference, whether to respond to the request for bulk data and if such information is to be released, determine the form in which the information is to be available to the public. In resolving these questions, it is appropriate to consider (1) the interest of the judicial system; (2) the impact the request has on a particular clerk's office; and (3) the public interest in releasing the information.

■ It is clearly in the best interest of the judicial system for the federal courts to have a uniform policy governing the release of information to the public. This was recognized by Congress in the enactment of 28 U.S.C. §§ 1913, 1914(b), 1926 and 1930(b). Congress has also recognized that the information available in the judicial system is not of the kind that should be subject to the Freedom of Information Act. 5 U.S.C. § 552(e). The public has a right to inspect and copy public records or documents filed with the court. This is the extent of the public's common law right of access to public documents. Any record

generated within the clerk's office is a document originated for administrative and management purposes. It is not a document or paper filed with the court by a person or entity using the judicial system. As a result, it is not a public record to which the public has a right of access. If the documents originating in the clerk's office as opposed to being filed in the clerk's office are to be made available to the public, the policy should be uniform throughout the judicial system and the policy should be developed by the Judicial Conference as provided by Congress.

At the present time, the clerk only has one request for "bulk data" or computer diskettes. This request cannot be accommodated during normal working hours without depriving the judge's office, the clerk's office and the bankruptcy administrator's office of the use of the information on the computer system while the diskettes are being compiled on the clerk's network server. This act would require someone in the clerk's office to remain after hours for approximately thirty minutes. However, assuming the clerk ran her backup diskettes after regular working hours, the clerk could copy those diskettes the next day without it interfering with the network system. This would require the time and skill of one person and one computer for approximately one hour or more during regular working hours. It is much more time consuming to copy the diskettes without shutting down the net work than it is to run the backup of diskettes. Obviously, it adversely affects the clerk's office if the clerk is required to comply with Mr. Simmons' request. If Congress has decreed that the Judicial Conference should determine the fees to be charged for miscellaneous services performed by the clerk, and the Judicial Conference has not established any policy as to whether or not internal documents originating in the clerk's office and used only in the internal administration or management of a clerk's office should be available to the public, then this decision should properly be made by the clerk on a case-by-case basis. The decision of the clerk on such matters should carry great

weight and a decision not to furnish information requested in bulk should be respected by the court unless there is an overriding public interest.

Mr. Simmons has been offered access to all of the records and documents which the public has filed with the clerk's office. There is a file room. There are in excess of 4,000 case files. Mr. Simmons has the right to examine the 4,000 files and copy any information in such files. This would be time consuming for Mr. Simmons and inconvenient for the clerk's office, but the records are available to Mr. Simmons upon request. Mr. Simmons has indicated that he desires the information for commercial reasons. He intends to obtain certain information about the type of assets and the value of the assets in certain cases and make this information available to other parties who may have an interest in bidding on or purchasing such assets. Presumably, Mr. Simmons anticipates making a profit on the use of such information. Mr. Simmons' need is not a general "public need" for such information. The information is sought by a business person for a business reason. If Mr. Simmons' idea becomes a successful business venture, it may result in some additional interest in the assets in cases filed in this district, but this is speculation only. The same speculation also generates the fear that Mr. Simmons' request will become a weekly or monthly request and others will make the same request for diskettes for the same or like purpose. Without resorting to such speculation, it is clear that the preservation of the integrity and efficiency of the clerk's office is of far more significance to the judicial system than is satisfying the personal request of Mr. Simmons to provide him information on which he expects to make a profit through use or resale. There is certainly no overriding public interest to be served.

This court is not aware of any reason why the general public should be permitted to obtain copies of the database in the clerk's office. This information is generated solely within the clerk's office from records filed with the court by the public. The documents filed with the court are public records. The documents, tapes, diskettes, reports generated or originated by the clerk are not public records in the sense that they are available for copying or inspection by the public, even though they may be "public records" in the sense that they were generated or originated by public officials.

The request of Mr. Simmons should be denied. A separate Order will be so entered.